Stewart, J.
 

 Under the law of Ohio prior to September 25, 1947, there could be established in any municipal corporation having a police department, supported in whole or in part at public expense, a police relief fund distributed by a board of trustees having the power to make rules and regulations fixing the. qualifications of those entitled to pensions from such fund and fixing the amount of such pensions. After the police relief fund had been established and the trustees made rules and regulations as to the administration of the fund and fixing the qualifications of those entitled to pensions and the amounts thereof, one who came within the scope of the rules and regulations was entitled to a pension in accordance therewith.
 

 Prior to 1937, a police pension was deemed to be a gratuity and, therefore, subject to change by trustees, but in that year Section 4628-1, General' Code (117 Ohio Laws, 31), was enacted by the General Assembly and provides as follows:
 

 ‘ ‘ The granting of a pension to any person hereafter pursuant to the rules adopted by the trustees shall operate to vest a right in such person, so long as he shall remain the beneficiary of such pension fund, to
 
 *374
 
 receive such pension at the rate so fixed at the time of granting such pension.”
 

 The pensions granted to relators in 1943 and 1941, respectively, gave each of them a vested right, as long as they remain beiieficiaries of the Lakewood pension plan, to receive pensions at the rate fixed at the time of the granting of such pensions.
 

 What was the rate fixed?
 

 It will be noted in Section 1, Benefieiariós, of the rules of the respondents, in force at the time of the granting of the pensions to relators, that any member who retired from service in the police department after 25 years was granted a pension equal to eleven-sixteenths of the salary paid
 
 from time to time
 
 for the position from which the member retired, in no event to be less than $100. Any member who was retired after 20 years of service was granted a pension in an amount equal to one-half of the salary paid
 
 from ' time to time
 
 for the position from which such member retired. Those payments were clearly authorized by the provisions of Section 1,
 
 supra.
 

 However, relators were not retired from the police department, they were discharged.
 

 Section 4, Beneficiaries, of the rules of the' respondents, provided that the pension of a discharged police department member should be six-sixteenths of his salary
 
 at the time of discharge.
 
 -
 

 It is true that after the phrase, “time of discharge,” in'Section 4,
 
 supra,
 
 come the words, “subject to the provisions set forth in Section 1 of this Act.” Section 4 does not say
 
 according to the provisions,
 
 but
 
 “subject to the provisions,”
 
 and those provisions are that the members must have passed regular, complete civil service examinations, have made written applications to the board "of trustees through proper channels, the same as one voluntarily retiring, and must have com
 
 *375
 
 plied with all the requirements which are incumbent upon a retiring member under Section 1.
 

 It is perfectly logical that there should be a distinction as to pensions between those who have retired after long service and those who have been discharged after a shorter service.'
 

 Pension funds are authorized and established by an appreciative- public for the purpose of giving future security to the courageous protectors of the property and persons of the citizens of a community. Through the means of a pension fund it is possible to attract to the police service men with courage, loyalty, devotion, ability and integrity.
 

 When a police officer has served for the requisite time and has been retired, it is natural that he be treated as generously as possible in thp way of a lifetime pension. However, the situation is different in reference to men who have been discharged from the police force. Although the Lakewood rules provide that such a discharged officer, if he has served continuously for a minimum of 15 years, may receive a pension at the rate of six-sixteenths of his salary at’ the time of discharge provided his discharge was not caused by dishonesty, habitual intoxication or conviction of a felony, such officer was in a different category from a retired officer. The former may have been discharged for gross incompetency involving cowardice, lack of loyalty or other characteristics detrimental to a good police department, or he may have brought about his own discharge in order to accept employment elsewhere and at the same time .draw a police pension. Therefore, there is genuine justification, if a discharged officer was given a pension at all, to fix it as of the date of his discharge, as was done in Section 4, Beneficiaries, of the rules of the respondents, rather than to grant the right to an in
 
 *376
 
 creasing pension as was done with reference to retired men in Section 1.
 

 It is contended by the relators that since successive members of the Board of Trustees of the Lakewood Police Relief Fund paid to relators six-sixteenths of the salaries paid from time to time for the positions from which they were discharged,, instead of six-sixteenths of the salaries at the time of discharge, such payments constituted an interpretation by the trustees to the effect that Section 4 meant the same as Section 1 with reference to payments, and that respondents could not, in March 1947, change that interpretation. With that contention we do not agree.
 

 The police relief fund is a public fund.'
 

 This court, in paragraph one of the syllabus in
 
 State, ex rel. Smith, Pros. Atty.,
 
 v.
 
 Maharry,
 
 97 Ohio St., 272, 119 N. E., 822, held:
 

 “All public property and public moneys, whether in the custody of public officers or otherwise, constitute a public trust fund, and all persons, public or private, are charged by law with the knowledge of that fact. Said trust fund can be disbursed only by clear authority of law.”
 

 It is obvious that the trustees were authorized to play relators only in accordance with the rules which were in effect at the time of relators’ discharge, and if they paid relators greater sums than those rules authorized, such payments were illegal and unlawful. The trustees’ acts in making the payments cannot be considered as an interpretation of the rules. No one can acquire a prescriptive right to illegal and unlawful payments from public trust funds.
 

 It is contended further by relators that they are entitled to receive $108.75 (Hall) and $105 (Taylor) per month by reason of the enactment of amended Section 4628, General Code (122 Ohio Laws, —), ef
 
 *377
 
 fective September 25, 1947, wbicb provides in part:
 

 “* * *
 
 Members of tbe fund who, prior to the effective date of this act, were granted retirement pensions by the trustees of the police relief and pension fund as a result of length of service in the police department shall be entitled to receive pensions as provided for in paragraph 9 of this section. * * * ”
 

 “9. Every retired policeman, who has been receiving a pension prior to the effective date of this act, shall receive an annual pension payable in 12 monthly installments in an amount equal to 12 times the highest monthly pension granted such policeman by the trustees of the police relief and pension fund prior to said effective date, or $1200, whichever amount is the greater. There is hereby vested in every such policeman the right to be paid and to receive a pension in the amount fixed by this paragraph.”
 

 The argument of the relators is that, since prior to September 25, 1947, the highest monthly pension granted them was as,to Hall $108.75 per month and as to Taylor $105 per month, they have vested rights to those respective sums by virtue of the above-quoted provisions of amended Section 4628, General Code.
 

 There are two complete answers to such contention.
 

 In the first place, the September 25, 1947, amendment refers only to retirement pensions and to retired policemen. Relators were not retired, they were both discharged from the police department and are, therefore, not covered by the September 25, 1947, amendment. The use of the words, “retirement pensions,” and, “retired policeman,” shows a legislative intent to exclude all other pensioners from the benefits of the amendment. It is a perfect instance for the use of the rule of construction,
 
 inclusio unius est exclusio alterius.
 
 In the second place, the sums of $108.75 and $105 per month, respectively, were not legally grant
 
 *378
 
 ed to relators. At the time of their retirement $84.38 and $75,94 per month were respectively and lawfully granted and the higher rates were illegally and unlawfully paid. The September 25, 1947, amendment must be limited to the highest monthly pension lawfully granted.
 

 Paragraph nine, Section 4628, General Code, effective September 25, 1947, provides, in part:
 

 “No person shall be entitled to receive pension or disability payments pursuant to the provisions of this section while he is holding an elective or appointive full time salaried office or position in the service of the state or any political subdivision thereof.”
 

 Upon the basis of that provision, a letter was written by the secretary of the respondent board to Taylor on October 31, 1947, to the effect that inasmuch as he was employed full time by the city of Cleveland it was the consensus of the law director and the trustees of the Lakewood police fund that Taylor was not entitled to receive a pension and that, therefore, the same would be withheld while he held that position.
 

 In the hearing of this case and in the briefs, there was much argument as to whether a motorman or conductor working for a transportation, system owned in a proprietary capacity by a city holds an elective or appointive salaried office or position in the employ of the state or any political subdivision thereof, and likewise as to the constitutionality of withholding a pension from one so working, inasmuch as he has been given a vested right to receive the pension.
 

 We are not called upon to decide those questions.
 

 . The respondents, in their answer to the supplemental petition of Taylor, ‘ ‘ admit that on or about October 31, 1947, a written notice was sent to relator by the secretary of defendants that the trustees would withhold pension payments to relator on the ground that
 
 *379
 
 he occupies a full time salaried position under a political subdivision of the state of Ohio, but allege that said written notice was sent without order of the trustees and that, subject to order of this court upon final disposition hereof, the trustees will continue to pay relator the sum of $75.94 as the amount of pension vested in and payable to relator under and by virtue of the rules and regulations of defendants applicable to said relator. ”
 

 In respondents’ brief it is stated, “Ip the stipulations of fact filed in this court, stipulation 20 [referring to tbe above-meiitioned written notice] was made through error.”
 

 We do not decide whether mandamus is a proper remedy in these cases. A person is not entitled to the extraordinary writ of mandamus unless he can establish a clear, legal right thereto. Quaere, whether relators have no other remedies in the ordinary course of law, to wit, the right to bring actions for the amounts of money claimed to be due them. It is true that their alleged claims would accrue every month, but the adjudication of one of them would probably settle their rights as to subsequent payments. However, according to the view we have taken, relators would not be entitled to writs of mandamus even though mandamus actions were proper to test the merits of their claims. •’
 

 ■ For the reasons stated the writ of mandamus prayed for in each of the instant cases is disallowed and denied. ,
 

 Writs denied.
 

 Weygandt, C. J., Turner, Matthias, Hart, Zimmerman and Sohngen, JJ., concur.