THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.* PENIX, A.K.A. DAVIS, APPELLEE AND CROSS-APPELLANT.

[Cite as State *v.* Penix (1987), 32 Ohio St. 3d 369.]

(No. 86-1723—Decided September 16, 1987.)

*Stephen A. Schumaker,* prosecuting attorney, and *David Smith,* for appellant and cross-appellee.

*Randall M. Dana,* public defender, *David C. Stebbins* and *S. Adele Shank,* for appellee and cross-appellant.

WRIGHT, J.

## I

We first turn to appellee's cross-appeal attacking his conviction. Upon a review of the record, the briefs of the parties, and the exhaustive opinion of the court of appeals, we find no prejudicial error in the guilt phase of the proceedings. Therefore, we affirm appellee's conviction for aggravated murder.

## II

We now turn to the penalty phase of the proceedings. During this phase, the trial jury must "determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case." R.C. 2929.03(D)(2). A sentence of death may be imposed only if the trial jury finds that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

At the conclusion of the penalty phase, over objection by appellee's counsel, the trial judge instructed the jury that there were two aggravating circumstances to weigh against the factors in mitigation, namely:

"1) That the Defendant, Bill Penix, aka Bill Davis, committed the offense of aggravated murder with prior calculation and design, and;

"2) That the Defendant, Bill Penix, aka Bill Davis, as the principal offender committed the offense of aggravated murder of Stephen Barker while the Defendant was committing or attempting to commit aggravated robbery."

The court of appeals held that the charge with respect to the first aggravating circumstance was inaccurate and misleading, resulting in prejudicial error. We agree. The ag-

gravating circumstance of which appellee was convicted was R.C. 2929.04(A), which provides as follows:

"Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

"* * *

"(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

Since the jury found that appellee was the principal offender, the second aggravating circumstance referred to in the instructions was present. The first, however, was an incomplete statement of a portion of R.C. 2929.04(A)(7) not applicable to appellee. Prior calculation and design is an aggravating circumstance only in the case of an offender who did not personally kill the victim. Thus, the criteria set forth in R.C. 2929.04(A)(7) are constructed in the alternative. If the aggravated murder was committed during the course of one of the enumerated felonies, then the death penalty may be imposed only where the defendant was the principal offender (i.e., the actual killer), or where the defendant was not the principal offender, if he committed the murder with prior calculation and design. The language of the statute provides that these are alternatives which are not to be charged and proven in the same

cause. Thus, if the defendant is found to be the principal offender, then the aggravating circumstance is established, and the question of whether the offense was committed with prior calculation and design is irrelevant with respect to the death sentence.

When at least one aggravating circumstance has been established beyond a reasonable doubt, the jury must consider and weigh the aggravating circumstances against the mitigating factors. R.C. 2929.04(B). This weighing process is designed to guide the sentencing authority's discretion by focusing on the "circumstances of the capital offense and the individual offender * * *," thus reducing the arbitrary and capricious imposition of death sentences. State v. Jenkins (1984), 15 Ohio St. 3d 164, 173, 15 OBR 311, 319, 473 N.E. 2d 264, 277. Like all penalty provisions, R.C. 2929.04(B) must "* * * be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A).

In State v. Johnson (1986), 24 Ohio St. 3d 87, 94, 24 OBR 282, 288, 494 N.E. 2d 1061, 1067, this court held that "[p]resenting the jury with specifications not permitted by statute impermissibly tips the scales in favor of death, and essentially undermines the required reliability in the jury's determination." Therefore, we held that "R.C. 2941.14 limits the aggravating circumstances which may be considered in imposing the death penalty to those specifically enumerated in R.C. 2929.04(A)," and vacated the death sentence. Johnson, supra, at the syllabus.

The state argues, however, that the holding in State v. Jenkins, supra, that a death sentence can stand despite jury instructions on duplicative specifications, is controlling. We disagree. In Jenkins, although the aggravating cir-

cumstances involved were duplicative and several of them should have been merged, they did comport with the circumstances set forth in R.C. 2929.04(A). None of the instructions in *Jenkins* was invalid as was the first instruction in the cause at issue. Furthermore, in finding that the error in *Jenkins* was harmless, we relied on the fact that in charging the jury "the trial judge herein made no suggestion that the 'presence of more than one aggravating circumstance should be given special weight.'" (Citations omitted.) *State v. Jenkins, supra*, at 199, 15 OBR at 341, 473 N.E. 2d at 296. However, in the cause at issue, the trial court compounded the error by charging the jury that "[i]t is not only the quantity of the aggravating circumstances versus the quantity of the mitigating factors which are to be the basis of your decision. The quality or importance of the mitigating factors and the aggravating circumstances must *also* be considered." (Emphasis added.) Thus, the jury was explicitly told that the quantity of the aggravating circumstances and mitigating factors should be a consideration. Since the absence of such a charge was crucial to the *Jenkins* finding of harmless error, *Jenkins* is not controlling in this case.

Appellee is entitled to jury participation in his sentencing pursuant to R.C. 2929.03(C)(2). However, we cannot say that the erroneous submission of the "first" aggravating circumstance compounded by the instruction permitting consideration of the quantity of aggravating circumstances did not taint the jury's deliberative process. As stated, we must agree with the court of appeals that the improper jury instructions constituted prejudicial error which could not simply be corrected in the appellate review process pursuant to R.C. 2929.05. Consequently, we affirm the vacation of appellee's sentence by the court of appeals and remand the cause to the trial court for resentencing.

## III

We must now consider the procedure to be employed, and the penalties which may be imposed, upon resentencing.

The state contends that the death sentence can be imposed on resentencing. While the United States Supreme Court suggested in *Skipper* v. *South Carolina* (1986), 476 U.S. ____, 90 L. Ed. 2d 1, that the imposition of a death sentence at a resentencing hearing may be permitted when it is specifically authorized by a state's death penalty statute, the Ohio Revised Code provides no such authorization. R.C. 2929.03(C)(2)(b) provides that the *trial* jury and the *trial* judge shall sentence a defendant who has been tried by jury and convicted of aggravated murder and one or more of the specifications set forth in R.C. 2929.04(A). There is no statutory provision for a second jury to be impaneled and make a recommendation on the death penalty at resentencing. We agree with the court of appeals that the sentencing recommendation must be made by the same jury that convicted the offender at the guilt phase of this bifurcated proceeding.

Furthermore, R.C. 2929.03(D)(2), which describes the procedure to be followed by the jury in reaching a decision on the death penalty, provides as follows:

"Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circum-

stances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment * * *." (Emphasis added.)

Thus, the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial determinations.[3]

Since there is no statutory authority allowing the imposition of the death penalty upon resentencing, we may not create such a procedure out of whole cloth. Therefore, we hold that when an accused is tried by jury, and convicted of aggravated murder with death specification, a death sentence may be imposed by the trial judge only upon recommendation of the same jury that tried the guilt phase of the proceedings, pursuant to the criteria set forth in R.C. 2929.03. Thus, when a case is remanded to the trial court following vacation of the death sentence due to error occurring at the penalty phase of the proceeding, the trial court, in resentencing the offender, is limited to the sentences of life imprisonment with parole eligibility after serving twenty full years of imprisonment or life imprisonment with parole eligibility after serving thirty full years of imprisonment. (R.C. 2929.06.)

Accordingly, we remand this cause to the trial court for resentencing consistent with the procedures discussed in this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER and H. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

HOLMES, J., dissents.

HOLMES, J., dissenting. After performing the independent review required by R.C. 2929.05(A), I am persuaded both that the aggravating circumstance of Penix being the principal offender in the perpetration of a felony murder outweighs the sole mitigating factor herein beyond all reasonable doubt, and that the jury's improper consideration of the statutorily valid aggravating circumstance of prior calculation and design (although inapplicable here in the alternative) did not affect the verdict. I would affirm the

---

[3] The role of the jury is integral to the sentencing process in death penalty cases. While a recommendation by the jury that the death penalty be imposed must be reviewed and reweighed by the trial and appellate courts, a jury decision to impose life imprisonment is final. See R.C. 2929.03 (D)(2). If the jury recommends life imprisonment, the trial judge cannot override such a determination and impose a sentence of death. Our death penalty provision is consistent with that of twenty-eight other jurisdictions in this respect. However Florida, Indiana and Alabama allow a judge to impose a sentence of death over a jury recommendation of life imprisonment. See *Spaziano* v. *Florida* (1984), 468 U.S. 447; Fla. Stat. Sections 921.141(3) and (4); Ala. Code Section 13A-5-47(e); and Ind. Code Section 35-50-2-9(e).

defendant's sentence. In addition, I must dissent from the syllabus announced by the majority, a syllabus which obscures legislative intent, ignores this court's ability and obligation to ensure meaningful resentencing of death penalty candidates, and proclaims a dangerous precedent for convicted capital defendants who wish to escape a death sentence. When a case is remanded to the trial court following vacation of a jury-recommended death sentence due to error occurring at the penalty phase of the proceeding, the trial court should be able to hold a resentencing hearing before a new jury, impaneled pursuant to R.C. 2945.18 *et seq.,* at which the state may seek the death penalty.

It is clear that the trial court below erred in instructing the sentencing jury that it could consider the alternative circumstances listed in R.C. 2929.04(A)(7) as two separate aggravating circumstances. Although both circumstances are statutorily valid, cf. *Zant* v. *Stephens* (1983), 462 U.S. 862, 885-886, they are mutually exclusive, depending on whether the defendant was the principal offender in the felony murder. The error which occurred was thus a " 'mere error of state law' * * * [and] not a denial of due process." *Engle* v. *Isaac* (1982), 456 U.S. 107, 121, fn. 21, quoting *Gryger* v. *Burke* (1948), 334 U.S. 728, 731. Thus, as in *Barclay* v. *Florida* (1983), 463 U.S. 939, the stringent federal harmless-error analysis necessary in *Zant* and used by this court since *State* v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323, need not be applied. *Barclay, supra,* at 951, fn. 8. Here, as in both *Barclay* and *Zant,* the evidence supporting the improper aggravating circumstance was otherwise admissible for consideration by the sentencing authority. R.C. 2929.03(D)(1). Here, as

in both *Barclay* and *Zant,* the additional procedural safeguards and checks on a harmless error analysis provided in R.C. 2929.03 and 2929.05 protect against arbitrary, capricious and disproportionate sentencing. *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 199, 15 OBR 311, 341, 473 N.E. 2d 264, 296.

These safeguards enable the reviewing court to isolate errors of the type which occurred below and make "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." (Emphasis *sic.*) *Zant, supra,* at 879; see, also, *Jenkins, supra,* at 199, 200, 15 OBR at 342, 473 N.E. 2d at 297. During the mitigation hearing, the only evidence supporting one of the enumerated mitigating factors was that Penix was eighteen years of age at the time of the offense. The evidence reflected a significant history of criminal convictions, including theft and resisting arrest, and juvenile adjudications, including breaking and entering, and an admitted armed robbery, all within eight years of the murder of Stephen Barker.

The clinical psychologist who rendered various psychological tests to Penix in February 1983, testified that defendant was of average intelligence and slightly emotionally immature. The tests performed did not suggest any mental illness, but did reveal an antisocial personality disorder and a borderline personality disorder manifested by the use of repression and denial, some lack of personal insight and excessive rigidity with some reluctance to admit to what would be socially acceptable limitations. The psychologist testified Penix might be receptive to rehabilitation in a controlled environment.

A social worker with the Dayton Forensic Center presented a social

history of defendant, collated mostly from an interview with his mother, Merry Davis. Davis related that her home was rather disorganized, due to her frequent failed marriages. In addition, Davis noted a behavioral change in her son soon after he began using marijuana at age thirteen. During the last few years prior to the murder, Penix was "pretty well living on his own."

Penix testified on his own behalf at the hearing, and stated he became heavily involved in drugs and alcohol at the age of fifteen. He related the details of his prior criminal activity, as well as his receipt of a G.E.D. while confined in the Youth Diagnostic Center in New Mexico. He stated he felt remorse for what happened to Stephen Barker but denied killing him, which testimony is inconsistent with prior statements given by defendant.

Davis testified, confirming defendant's disordered childhood and his heavy use of drugs and alcohol.

Another clinical psychologist, who had also performed various tests on defendant, confirmed his antisocial and borderline personality disorder and testified he has a learning disability and is unable to integrate and reason well.

Defendant's childhood babysitter testified generally as to the disruptive and unsettled character of the Davis household, and the lack of affection that Davis' husbands had shown toward defendant and his brother.

The state presented rebuttal testimony, including that of one of defendant's cellmates who testified that defendant had attempted to solicit his testimony in an effort to cover up defendant's guilt.

After reviewing the above evidence in mitigation, I am convinced that the aggravating circumstance defendant was found guilty of commit-

ting outweighs the mitigating factors presented beyond a reasonable doubt. I am also convinced that the improper instructions to the jury concerning defendant's prior calculation and design did not affect the balance struck by the sentencing authorities below, especially in light of the admissibility of evidence to prove such state of mind irrespective of the erroneous instruction. Although the instructions given were clearly erroneous, the error was not, as mentioned above, of constitutional dimension. Statutory errors of this type should not form the basis for a reversal of a sentence unless they actually affected the ultimate sentencing decision, particularly when such a reversal forever forestalls imposition of the death penalty under the syllabus law announced today.

I cannot agree with the inferences and conclusions drawn from the majority's reading of R.C. 2929.03 through 2929.05 concerning the penalties and procedure employed upon resentencing. The majority, after referencing the use of "trial jury" in R.C. 2929.03, begins with the obvious: it concludes that only the trial jury may sentence the defendant following the initial guilt phase of the trial. It next observes that no provision has been made for another jury to make the sentencing decision. This observation is irrelevant, as the *only* reference to a sentencing jury is found in R.C. 2929.03, which deals solely with the guilt phase. The majority next makes an incomplete observation that "there is no statutory authority allowing the imposition of the death penalty upon resentencing." However, *neither is there any statutory authority allowing the trial court to resentence the offender to life imprisonment only* following vacation of a sentence due to errors in the original sentencing.

The only provision made for resen-

tencing after vacation of a death sentence, R.C. 2929.06, is *inapplicable* to errors of the type which occurred in the case at bar. That statute provides:

"If the sentence of death that is imposed upon any offender is vacated upon appeal because the court of appeals or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is vacated upon appeal for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, or is vacated pursuant to division (C) of section 2929.05 of the Revised Code, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall sentence the offender to life imprisonment with parole eligibility after serving twenty full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment."

Only three instances are covered by R.C. 2929.06: (1) the reviewing court's inability to affirm the death sentence under its proportionality review or its independent weighing of aggravating and mitigating circumstances (R.C. 2929.05[A]); (2) a determination that the statutory sentencing procedure is unconstitutional; or (3) vacation of the sentence due to the fact that the offender was not eighteen years of age at the time of the murder (R.C. 2929.05[C]). Absolutely no direction is given for resentencing persons whose death sentence was vacated due to trial errors occurring during the mitigation phase. To use the preclusive procedure of R.C. 2929.06 in this case, as the majority has done, violates the rule of construction, *inclusio unius est exclusio alterius. State, ex rel. Hall,* v. *Bd. of Trustees* (1948), 149 Ohio St. 367, 37 O.O. 48, 78 N.E. 2d 719. The General Assembly is presumed to have considered and listed *all* the situations in which the resentencing procedure of R.C. 2929.06 is to be used, to the exclusion of all other situations.

This court is thus faced with a gaping hole in the statutory scheme which cries out to be filled. This court is not powerless to fill that gap until such time as the legislature, if it so chooses, can act. This court should not shrink from its obligation to provide for that correction of an erroneous sentence which is most consistent with existing statutory intent.

First, and perhaps most important, there is nothing unconstitutional in permitting the state to seek whatever punishment is lawful on remand following vacation of a death sentence on appeal, since the reversal nullifies the sentence and " 'the slate [is] wiped clean.' " *Bullington* v. *Missouri* (1981), 451 U.S. 430, 442. As long as a reviewing court does not find the evidence legally insufficient to justify imposition of the death penalty, the Double Jeopardy Clause of the United States Constitution does not foreclose a second sentencing hearing at which the "clean slate" rule applies and the death penalty may be reimposed. *Poland* v. *Arizona* (1986), 476 U.S. ____, 90 L. Ed. 2d 123. This court should not send signals to counsel for convicted capital defendants that the latter may forever avoid a death sentence upon the occurrence of any and all errors in their original sentencing hearing.

Once it is recognized that the state may again seek the death penalty upon resentencing under these circumstances, the proper procedure to be

followed becomes evident from the legislature's existing scheme. Although the United States Supreme Court has never addressed the constitutional necessity of jury participation in capital sentencing, *Lockett* v. *Ohio* (1978), 438 U.S. 586, 609, 9 O.O. 3d 26, 38, fn. 16; *State* v. *Jenkins, supra,* at 187, 15 OBR at 331, 473 N.E. 2d at 287, the Ohio General Assembly has clearly expressed its preference for the jury as a sentencer. Legislative Services Commission Summary of S.B. No. 1 (R.C. 2929.03), effective October 19, 1981.[4] Thus, in remanding an accused for resentencing pursuant to R.C. 2929.05 and 2953.07,[5] this court should give deference to this expressed legislative preference and permit the accused to have his sentencing decision made by a jury impaneled pursuant to R.C. 2945.18 *et seq.*

Ohio is not the only state whose death penalty statute omits any mention of the procedures to be followed on remand, although we are by today's decision the only state which, upon facing this dilemma in the absence of any statutory provision,[6] has opted to wholly preclude the death sentence on such remand. In Florida, where the sentencing jury is merely advisory,[7] a defendant whose death penalty sentence is vacated has a right to have a jury reimpaneled to render an advisory sentence. *Engle* v. *State* (Fla. 1983), 438 So. 2d 803, certiorari denied (1984), 465 U.S. 1074; *Lamadline* v. *State* (Fla. 1974), 303 So. 2d 17; cf. *Mikena* v. *State* (Fla. 1981), 407 So. 2d 892, certiorari denied (1982), 456 U.S. 1011. However, no statutory provision provides for such a procedure.[8]

Similarly, in Georgia, a new trial

---

[4] Specifically, Comment 5 to the Legislative Services Commission Summary states, at 19:

"In *Lockett* v. *Ohio, supra,* the defendant argued that the U.S. Constitution requires the death penalty to be imposed by a jury. In footnote 16 of its opinion, the majority in *Lockett* stated that it was not necessary to address this issue, because of its decision that *Lockett* had been sentenced in violation of the Eighth Amendment. The U.S. Supreme Court in *Furman* v. *Georgia,* 408 U.S. 238 (1972), declared all of the death penalty statutes in the United States unconstitutional, because they permitted the jury to grant mercy to a defendant without any stated reason or guidance by the court or the laws. Such a procedure was considered too arbitrary and capricious. The death penalty statutes of Georgia, Florida, and Texas, all of which have been found to be constitutional (*Gregg* v. *Georgia* 428 U.S. 153 (1976); *Proffitt* v. *Florida,* 428 U.S. 242 (1976); *Jurek* v. *Texas,* 428 U.S. 262 (1976)), use some form of jury participation in the sentencing procedure, although the Florida jury participation is of a purely advisory nature."

[5] R.C. 2953.07 provides in pertinent part:

"Upon the hearing of an appeal other than an appeal from a mayor's court, the appellate court may affirm the judgment or reverse it, in whole or in part, or modify it, and order the accused to be discharged or granted a new trial. The appellate court may remand the accused for the sole purpose of correcting a sentence imposed contrary to law. * * *"

[6] See, *e.g.,* Pa. Consol. Stat. Ann. Title 42, Section 9711(h)(2) (1982); Colo. Rev. Stat. Ann. Section 16-11-103(8)(b) (1986).

[7] Florida Stat. Ann. Sections 921.141 (1) and (2) (1985).

[8] Very little guidance is given to reviewing courts under the Florida scheme:

"(4) Review of judgment and sentence. The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida within 60 days after certification by the sentencing court of the entire record, unless the time is extended for an additional period not to exceed 30 days by the

on the sentence alone may be held before a new jury and the death sentence reimposed, where the first jury sentenced defendant to death and this sentence was reversed on appeal. *Miller* v. *State* (1976), 237 Ga. 557, 229 S.E. 2d 376; *Zant* v. *Redd* (1982), 249 Ga. 211, 290 S.E. 2d 36, certiorari denied (1983), 463 U.S. 1213. This is so even though the Georgia statute that explicitly permits resentencing on remand does not mention a new jury.[9]

Finally, Texas, whose death penalty formulation is unique,[10] see Model Penal Code and Commentaries (1980), Section 210.6, Comment 13, at 169, has reached a different solution. When a Texas death sentence has been improperly imposed, the reviewing court will "reverse the cause for an *entirely new trial,* rather than reform the sentence to life imprisonment * * *." (Emphasis added.) *Hartfield* v. *State* (Tex. Crim. App. 1980), 645 S.W. 2d 436, 442. This rather burdensome remedy results from an inability under Texas criminal procedure to conduct a new sentencing proceeding separate from the guilt proceeding,[11] and legislative action has been increasingly

---

Supreme Court for good cause shown. Such review by the Supreme Court shall have priority over all other cases and shall be heard in accordance with rules promulgated by the Supreme Court." Florida Stat. Ann. Section 921.141(4) (1985). See, also, Tex. Code Crim. Proc. Ann. Article 37.071(f) (Vernon's 1987 Cum. Supp.).

[9] Compare Ga. Code Ann. Section 17-10-35(e) (1982), which reads—
"The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
"(1) Affirm the sentence of death; or
"(2) Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel. The records of those similar cases referred to by the Supreme Court in its decision and the extracts prepared as provided for in subsection (a) of Code Section 17-10-37 shall be provided to the resentencing judge for his consideration."
—with South Carolina Code Section 16-3-25(E) (1985), which reads:
"The court shall include in its decision a reference to those similar cases which it took into consideration. In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
"(1) Affirm the sentence of death; or

"(2) Set the sentence aside and remand the case for resentencing by the trial judge based on the record and argument of counsel. The records of those similar cases referred to by the Supreme Court of South Carolina in its decision, and the extracts prepared as hereinafter provided for, shall be provided to the resentencing judge for his consideration. If the court finds error prejudicial to the defendant in the sentencing proceeding conducted by the trial judge before the trial jury as outlined under Item (B) of § 16-3-20, *the court may set the sentence aside and remand the case for a resentencing proceeding to be conducted by the same or a different trial judge and by a new jury impaneled for such purpose.* In the resentencing proceeding, the new jury, if the defendant does not waive the right of trial jury for the resentencing proceeding, shall hear evidence in extenuation, mitigation or aggravation of the punishment in addition to any evidence admitted in the defendant's first trial relating to guilt for the particular crime for which the defendant has been found guilty." (Emphasis added.)

[10] Tex. Code Crim. Proc. Ann. Article 37.071 (Vernon's 1987 Cum. Supp.).

[11] Tex. Code Crim. Proc. Ann. Article 44.29 (Vernon's 1987 Cum. Supp.) provides:
"Where the court of appeals or the Court of Criminal Appeals awards a new

called-for by the Texas courts. See *Hartfield, supra,* at 442, fn. 3; *Ellison* v. *State* (Tex. Crim. App. 1968), 432 S.W. 2d 955; *Evans* v. *State* (Tex. Crim. App. 1981), 614 S.W. 2d 414, 418 (Roberts, J., dissenting).

I would thus recommend a resentencing proceeding similar to that employed by South Carolina, see fn. 9, *supra,* utilizing the specific standards on retrial enumerated in S.C. Code Section 16-3-25(E)(2) (1985):

"* * * In the resentencing pro-ceeding, the new jury, if the defendant does not waive the right of a trial jury for the resentencing proceeding, shall hear evidence in extenuation, mitigation or aggravation of the punishment in addition to any evidence admitted in the defendant's first trial relating to guilt for the particular crime for which the defendant has been found guilty."[12]

For the foregoing reasons, I must respectfully dissent.

---

trial to the defendant, the cause shall stand as it would have stood in case the new trial had been granted by the court below."

[12] See, also, Mo. Rev. Stat. Section 565.035(5) (1986).