THE STATE OF OHIO, APPELLEE, *v.* DENSON, APPELLANT.

[Cite as State *v.* Denson (1988), 40 Ohio St. 3d 30.]

(No. 86-1866—Submitted October 18, 1988—Decided December 7, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Leonard Kirschner, William E. Breyer* and *R. Thomas Moorhead,* for appellee.

*H. Fred Hoefle* and *Thomas A. Gelwicks,* for appellant.

Appellant, Dwight A. Denson, has withdrawn his challenges to the verdict of guilt. This cause is therefore reversed on authority of *State* v. *Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744, and remanded to the trial court

for resentencing on the aggravated murder conviction in accordance with that decision. See, also, *State v. Zuranski* (1987), 32 Ohio St. 3d 379, 513 N.E. 2d 753.

MOYER, C.J., SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. This case presents another instance where, following a trial for aggravated murder with specifications wherein the jury found both that the defendant was guilty and that the aggravating circumstances outweighed the mitigating factors, this court nevertheless reverses on the basis of technical errors in the sentencing phase and remands to the trial court in a manner which I believe to be violative not only of the legislative intent of the Act, but of the public policy of Ohio which provides that the death penalty be imposed for specific types of heinous murders.

In this dissent, I make reference to, and embrace all that I stated in, my dissent in *State v. Penix* (1987), 32 Ohio St. 3d 369, 513 N.E. 2d 744. However, I shall add some comments which I believe to be supportive of the state's position in this matter.

This court, in *Penix,* held that the defendant in an aggravated murder trial has the clear right to be sentenced to death only by the original trial jury, and that if error is found in the sentencing procedure the case must be remanded to the trial judge for resentencing, but the court may only consider life imprisonment with either a twenty-year or thirty-year parole eligibility. The majority of this court in so concluding founded its opinion on two very weak reeds. First, the court in its holding was basically interpreting R.C. 2929.03 and its subsections which deal with the imposition of sentence for a capital offense during the trial of the case. In that such provisions use the words "the trial jury" with respect to the imposition of the sentence, the majority of the court construed the language to mean that the defendant could not be resentenced to death by a newly constituted jury upon remand. If carried to the ultimate conclusion, such faulty line of reasoning would prevent the defendant from being resentenced at all in *Penix* since R.C. 2929.03 (C)(2)(a) and (b) provide, respectively, that the determination of a life sentence must also be determined "[b]y the panel of three judges that tried the offender * * *," or "[b]y the trial jury and the trial judge, if the offender was tried by jury."

In any event, as I stated in my dissent in *Penix,* R.C. 2929.03, and subsections thereunder, deal only with that sentencing which immediately follows the guilt phase of the bifurcated trial. The statute does not refer to resentencing after remand by this court to the trial court. The only section of law dealing with resentencing after vacation of a death sentence is R.C. 2929.06, which specifically provides only three instances in which the defendant, after death sentence is vacated, may not be resentenced to death: (1) the reviewing court's inability to affirm the death sentence under the proportionality review or its independent weighing of aggravating circumstances and mitigating factors; (2) a determination that the statutory sentencing procedure is unconstitutional; or (3) vacation of the sentence due to the fact that the offender was not eighteen years of age at the time of the murder. Absolutely no direction is given in these provisions for resentencing defendants whose death sentence was vacated due to trial errors during the mitigation phase. As I noted in my dissent in *Penix,* to use the preclusive

procedure in R.C. 2929.06 in *Penix* (or in this case) violates the rule of construction, *inclusio unius est exclusio alterius.* The General Assembly must be presumed to have considered and set forth all the situations in which the resentencing procedure is to be used, exclusive of all other situations.

The other weak reed upon which this court's majority opinion in *Penix* rests is its misreliance upon the United States Supreme Court's holding in *Skipper* v. *South Carolina* (1986), 476 U.S. 1, wherein this court interpreted the United States Supreme Court to have stated that: "While the United States Supreme Court suggested in *Skipper* v. *South Carolina* * * * that the imposition of a death sentence at a resentencing hearing may be permitted where it is specifically authorized by a state's death penalty statutes, the Ohio Revised Code provides no such authorization * * *." *Penix, supra,* at 372, 513 N.E. 2d at 747.

However, in contrast to this interpretation of the United States Supreme Court's holding in *Skipper* is the precise wording of that holding. Justice White, speaking for the majority of the court, stated that because of the errors found: "The resulting death sentence cannot stand, *although the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing* at which petitioner is permitted to present any and all relevant mitigating evidence that is available." (Emphasis added.) *Skipper, supra,* at 8.

The United States Supreme Court did not merely "suggest," but stated in clear and forthright language that the state is not precluded from seeking to impose the death penalty upon remand and a legally proper sentencing hearing. Further, the United States Supreme Court did not, as the majority

has set forth in *Penix,* impose the requirement "that the imposition of a death sentence at a resentencing hearing may be permitted when it is specifically authorized by a state's death penalty statute * * *." The court only mandated that, at such new sentencing hearing, the petitioner is permitted to present any and all relevant mitigating evidence.

The overriding legal principle to be applied in these types of cases is that where a defendant seeks and obtains a reversal, there is no bar by way of jeopardy to retrial and resentencing. *North Carolina* v. *Pearce* (1969), 395 U.S. 711. Also, there is no constitutional right to have the death penalty imposed only by a jury. *Spaziano* v. *Florida* (1984), 468 U.S. 447.

The statutory provisions providing for the guilt and sentencing phases of the trial of one accused of murder with death penalty specifications are extremely technical and complex so as to, hopefully, be in compliance with the United States Constitution and the United States Supreme Court mandates. Such provisions are painstakingly and artfully drafted. They are intended to comply with all constitutional and judicial pronouncements, but may fall somewhat short in some minimal respects. In such instances, the reasonable approach upon judicial appellate review would be to fill in the gaps caused by legislative error or oversight, in keeping with the legislative intent of the Act. Although I have stated upon many occasions that it is not the place of appellate courts to usurp the governmental function of the legislative body, I must agree with the wise words of Justice Oliver Wendell Holmes in his dissent in *Southern Pacific Co.* v. *Jensen* (1917), 244 U.S. 205, 221: "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially;

they are confined from molar to molecular motions."

This case, as did *Penix,* provides this court with just such an instance as would require us to fill in the appropriate gaps of this Act in order to reasonably carry out the intent of the legislature and the general public policy in these most important areas of great public interest. The majority in *Penix* articulated that "[s]ince there is no statutory authority allowing the imposition of the death penalty upon resentencing, we may not create such a proceeding out of whole cloth." *Id.* at 373, 513 N.E. 2d at 748. Even if this were partly so, the majority then created its own ill-fitting garment out of whole cloth which also was not provided for by the Act, and moreover was completely at odds with the general design of the General Assembly's enactment.

My writing further on this subject is not with the thought that I will effect a change in the majority's position, but to hopefully command the attention of our legislative body to the early consideration of, and necessary, amendments to the statutory sections of law involved here, in order to cure the problems presented with this area of criminal law and capital murder sentencing.

Accordingly, I dissent from the pronouncement of the majority in this case.