OPINION
{¶ 1} The state of Ohio ("State") appeals the decision of the Warren County Court of Common Pleas sentencing Timothy Hancock to life without parole following a jury trial. We reverse and remand the trial court's decision.
 {¶ 2} On December 22, 2000, Timothy Hancock was indicted on one count of aggravated murder, with two death penalty specifications for the death of Jason Wagoner, Hancock's cellmate. Death specification number one alleged murder committed while under detention, R.C. 2929.04(A)(4), and death specification number two alleged "course of conduct" murder, R.C. 2929.04(A)(5).
 {¶ 3} After the State presented evidence of Hancock's prior aggravated murder conviction, the trial court found him guilty of the R.C. 2929.04(A)(5) death specification. On November 26, 2001, the jury found Hancock guilty of aggravated murder and the remaining death specification under R.C. 2929.04(A)(4).
 {¶ 4} On December 6, 2001, during the penalty phase of the trial, the State moved to admit all exhibits that had been admitted at the guilt phase. The trial court admitted four of the exhibits. After deliberating, the jury recommended the death penalty.
 {¶ 5} On December 17, 2001, the trial court noted that an undetermined number of inadmissible trial phase exhibits were improperly submitted to the jury, specifically citing an audiotape of interviews, photographs and ligatures. The trial court declared a mistrial of the penalty phase, finding that the admission of this evidence was an outside communication to the jury and therefore presumptively prejudicial. Thereafter, the trial court did not conduct a weighing of the aggravating circumstances and mitigating factors pursuant to R.C. 2929.03(D) and (F), but sentenced Hancock to life in prison without parole.
 {¶ 6} The State appeals the trial court's decision, raising three assignments of error. Hancock has filed a cross-appeal. We will address the cross-appeal first because of its relevance to the State's assignments of error. We will then address the State's assignments of error, discussing its second and third assignments of error first.
Hancock's Assignment of Error No. 1
 {¶ 7} "O.R.C. § 2953.08 prohibits the State of Ohio from appealing the sentence imposed for any aggravated murder conviction."
 {¶ 8} Hancock contends that this court does not have jurisdiction over this case. He argues that R.C. 2953.08(D) precludes the State from appealing his aggravated murder sentence.
 {¶ 9} R.C. 2953.08(D) states that "[a] sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section."
 {¶ 10} Therefore, pursuant to the Ohio Revised Code, we do not have jurisdiction to review the sentence imposed by the trial court. However, in this case we are not asked to review the sentence, but the procedure the trial court used to determine the sentence as well as evidentiary determinations made by the trial court at the sentencing phase.
 {¶ 11} We agree with Hancock's cross-assignment of error, but do not agree that R.C. 2953.08(D) precludes us from reviewing the procedure the trial court used in determining the sentence. See State v. Steele
(June 28, 2001), Franklin App. No. 00AP-499 (defendant allowed to appeal consecutive sentences for murder conviction as being contrary to law where trial court did not make procedurally required findings pursuant to R.C. 2929.14[E][4]); but see State v. Brown (Feb. 9, 2001), Wood App. No. WD-00-033. We also do not agree that R.C. 2953.08(D) precludes us from determining whether the trial court's evidentiary rulings were correct. See R.C. 2945.67.[1]
 {¶ 12} Although we do not have jurisdiction to review the sentence imposed, we do have jurisdiction to hear the case as to procedural matters and the trial court's evidentiary rulings. As such, we overrule Hancock's first cross-assignment of error.
Hancock's Assignment of Error No. 2
 {¶ 13} "The trial court violated appellant's statutory right to have privileged communications with treating physicians when it ruled that defendant's plea waived the privilege."
 {¶ 14} Hancock contends that he did not waive his privileged communications with his treating physicians and therefore the State's testimony as to his mental state based upon these communications was improperly admitted to the jury.
 {¶ 15} Hancock affirmatively pled not guilty by reason of insanity. The trial court ordered a psychiatric evaluation pursuant to R.C. 2945.371(A). Dr. Lehrer conducted the examination. In his report, he stated that he relied upon some statements by two other treating physicians, Dr. Washington and Dr. Ferandez. Hancock claims that he did not waive his physician/patient privilege in regards to Drs. Washington and Ferandez and therefore, Dr. Lehrer could not form a report relying in part on discussions with them.
 {¶ 16} R.C. 2945.371(A) allows a trial court to order an evaluation of a defendant's competency at the time of the offense charged when he enters a plea of not guilty by reason of insanity. Pursuant to R.C. 2945.371(F), "[i]n conducting an evaluation of a defendant's mental condition at the time of the offense charged, the examiner shall consider all relevant evidence."
 {¶ 17} Here, Hancock had a history of purported mental illness. Therefore, in order to perform a complete examination of whether Hancock was insane at the time he committed the murder, Dr. Lehrer was obligated to "consider all relevant evidence." Further, the trial court noted that Hancock offered into evidence exhibits referring to his mental health.
 {¶ 18} For public policy reasons, it stands to reason that a person who places his sanity at issue, cannot then refuse to allow his sanity to be fully examined by use of all relevant evidence. See Nogglev. Marshall (C.A.6, 1983), 706 F.2d 1408, 1415. Because, "[u]nlike evidence relating to commission of the alleged acts, evidence of sanity or insanity can only be obtained from the defendant." Id. at fn. 6. Since Hancock put his mental health at issue by entering a plea of not guilty by reason of insanity and, pursuant to R.C. 2945.371(F), he waived his physician/patient privilege as to his psychiatric condition. As such, Hancock's second assignment of error is overruled.
State's Assignment of Error No. 2
 {¶ 19} "The trial court erred to the prejudice of the appellant by declaring a mistrial based on inadvertently irrelevant evidence, which was in fact properly admissible evidence."
 {¶ 20} The State maintains that the court determined prejudicial evidence was admissible pursuant to R.C. 2929.03(D)(1) and (2). The State also argues that the evidence was properly admissible as rebuttal evidence.
 {¶ 21} The State moved for all of its exhibits to be admitted as evidence in the penalty phase of the trial. The trial court only permitted four of the State's exhibits to be readmitted for this phase. The State did not object at trial to this ruling. A party has waived the right to contest an issue on appeal if that issue was not raised at the appropriate time in the trial court. State v. Awan (1986),22 Ohio St.3d 120, 123.
 {¶ 22} The State argues that pursuant to Crim.R. 51, it was not required to object because the trial court ruled on its motion to admit all of its exhibits. Crim.R. 51 states: "An exception, at any stage or step of the case or matter, is unnecessary to lay a foundation for review, whenever a matter has been called to the attention of the court by objection, motion, or otherwise, and the court has ruled thereon."
 {¶ 23} We find Crim.R. 51 applicable here. The State moved for the evidence to be admitted and the trial court ruled on the motion. Pursuant to Crim.R. 51, it was unnecessary for the State to lay further foundation for review by objecting to the trial court's ruling on its motion. SeeState v. Waddell, 75 Ohio St.3d 163, 1996-Ohio-100. As such, we may review the trial court's ruling on the admissibility of the evidence.
 {¶ 24} We review a trial court's decision as to the admissibility of evidence for an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, at paragraph two of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 158.
 {¶ 25} In this case, Hancock was found guilty of aggravated murder and two death specifications: murder committed while under detention, R.C. 2929.04(A)(4), and "course of conduct" murder, R.C. 2929.04(A)(5). During the penalty phase, Hancock offered five mitigating factors. These included mental illness, duress/coercion/strong provocation, previous sexual abuse, history of drug and alcohol abuse, and Warren Correctional Institution's alleged responsibility for the death of the victim.
 {¶ 26} The State contends that the inadvertently submitted exhibits were admissible pursuant to the R.C. 2929.03(D)(1) and as rebuttal evidence to Hancock's mitigating factors. The State also asserts that the evidence was not prejudicial to Hancock.
 {¶ 27} The Ohio Supreme Court recited the categories of evidence that may be introduced during the penalty phase of a capital prosecution pursuant to R.C. 2929.03(D)(1) and (2) in State v. Gumm, 73 Ohio St.3d 413, syllabus, 1995-Ohio-24. Specifically, that "subject to applicable Rules of Evidence, the state may introduce (1) any evidence raised at trial that is relevant to the aggravating circumstances specified in the indictment of which the defendant was found guilty, (2) any other testimony or evidence relevant to the nature and circumstances of those aggravating circumstances, (3) evidence rebutting the existence of any statutorily defined or other mitigating factors first asserted by the defendant, (4) the presentence investigation report, and (5) the mental examination report." Id. This is consistent with the court's holding inState v. DePew (1988), 38 Ohio St.3d 275, 282 and 283, that "the prosecutor, at the penalty stage of a capital proceeding, may introduce `* * * any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing * * *.'" Gumm,73 Ohio St.3d 421.
 {¶ 28} Here, the trial court ruled that evidence was inadvertently admitted to the jury for use in deliberation during the penalty phase. It then found that the inclusion of these items was an outside communication to the jury and therefore prejudicial. It named the following specific evidence as possibly being considered by the jury: the ligatures, photos and audiotaped interviews.[2] We find each of these items admissible in the penalty phase.
 {¶ 29} The photographs at issue were taken of the jail cell where the murder occurred. They include a photograph of the ligatures woven through the bed frame, the ligatures tied to the victim and photographs of the ligature around the victim's neck.
 {¶ 30} These photos show the nature and circumstances of the R.C.2929.04(A)(4) aggravating circumstance. Further, they rebut Hancock's mitigating factors of duress/coercion/strong provocation. The intricacy of the knots tying the victim to the bed and the fact that they were woven through the bed frame show that Hancock was not fearful or forced into his actions. Because the photos are admissible for these purposes, the trial court abused its discretion in not allowing the photos to be admitted during the penalty phase.
 {¶ 31} The ligatures used to tie down and strangle the victim were also possibly considered by the jury during the penalty phase. The ligatures were bed sheets torn into strips. Here, the ligatures should also have been admitted to show the nature and circumstances of the R.C.2929.04(A)(4) aggravating circumstance and as rebuttal evidence to Hancock's asserted mitigating factor that he was under duress/coercion/strong provocation. That Hancock took time to rip the bed sheet into strips, and the ability of the jury to see the number of strips created, rebuts Hancock's mitigating factor. Because the ligatures are admissible for this purpose, the trial court abused its discretion in not allowing the ligatures to be admitted during the penalty phase. SeeState v. LaMar, 95 Ohio St.3d 181, 203, 2002-Ohio-2128.
 {¶ 32} Finally, the trial court erred in not admitting the audiotape interviews into evidence for the penalty phase. Hancock asserts in the audiotaped interview that he was not insane. He also states that he planned the murder about four or five hours in advance. The interviews on the audiotape rebut Hancock's statements that he was mentally ill or under duress/ coercion/strong provocation. As such, the trial court erred in not admitting the audiotape interviews into evidence during the penalty phase of the trial.
 {¶ 33} We find all of this evidence admissible. Therefore, we find that the trial court abused its discretion in declaring a mistrial after learning of its inadvertent admittance to the jury for consideration during the penalty phase. The trial court acted unreasonably in not admitting the evidence. As such, the State's second assignment of error is sustained.
State's Assignment of Error No. 3
 {¶ 34} "The trial court erred to the prejudice of the appellant by declaring a mistrial when the admission of the evidence was harmless."
 {¶ 35} Our disposition regarding the State's second assignment of error renders moot any further consideration of the State's third assignment of error. Accordingly, the State's third assignment of error is overruled.
State's Assignment of Error No. 1
 {¶ 36} "The trial court overreached its statutory authority by declaring a mistrial during the sentencing phase."
 {¶ 37} The State first contends that the trial court erred by not writing a separate opinion weighing the aggravating circumstances and mitigating factors as required by R.C. 2929.03(F). The State argues further that if an error did occur in the penalty stage of Hancock's trial, that we should independently weigh the aggravating circumstances and mitigating factors.
 {¶ 38} Pursuant to R.C. 2929.03(D)(3), after the jury has unanimously recommended the death penalty, the trial court must then weigh the aggravating circumstances and mitigating factors. If the trial court then finds, "by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender." R.C. 2929.03(D)(3). If the trial court does not find that the aggravating circumstances outweigh the mitigating factors, then it shall impose one of the following sentences on the offender: (1) life imprisonment without parole; (2) life imprisonment with parole eligibility after serving 25 full years of imprisonment; or (3) life imprisonment with parole eligibility after serving 30 full years of imprisonment. Id.
 {¶ 39} After making this sentencing finding, the trial court then states "in a separate opinion its specific findings as to the existence of any of the mitigating factors, * * * the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were or were not sufficient to outweigh the mitigating factors." R.C.2929.03(F). R.C. 2929.03(F) requires the trial court to write this separate opinion regardless of whether the sentence imposed is death or life imprisonment. Id.
 {¶ 40} In the case sub judice, Hancock was found guilty of aggravated murder and two death specifications. During the penalty phase, the jury recommended the death sentence for Hancock. The trial court found that evidentiary exhibits were improperly given to the jury during this second phase. As such, the trial court found that the jury was prejudiced and declared a mistrial. It then proceeded to sentence appellant to life in prison without parole.
 {¶ 41} As stated earlier, we may not review the sentence meted out pursuant to R.C. 2953.08(D). However, we may review the procedure that the trial court used in making its sentencing determination. The trial court followed the guidelines in R.C. 2929.03(D)(2) by allowing the jury to make its sentencing recommendation. Although, it then found that a prejudicial error occurred.
 {¶ 42} The Ohio Supreme Court, recognizing that there are a variety of circumstances in which a mistrial may arise, "has been reluctant to formulate precise, inflexible standards. Rather, the court has deferred to the trial court's exercise of discretion in light of all the surrounding circumstances[.]" State v. Widner (1981),68 Ohio St.2d 188, 190. As stated earlier, we have found the trial court abused its discretion in determining that certain evidence was inadmissible at the penalty phase of the trial. As such, the trial court erred in declaring a mistrial after the jury rendered its sentencing recommendation.
 {¶ 43} We find that the trial court should have weighed the aggravating circumstances and mitigating factors pursuant to R.C.2929.03(F). We therefore reverse and remand this case to the trial court for it to weigh the factors and then resentence Hancock.
 {¶ 44} In Ohio, when a case is sent back for resentencing, the death penalty is usually no longer a possible sentence. See State v.Penix (1987), 32 Ohio St.3d 369, 372 and 373. In Penix, the court surmised that the same jury who determines the guilt of the defendant, must also be the same to determine whether to recommend the death penalty. Id. Therefore, if a case is remanded for resentencing, the defendant may not again be subject to the death penalty unless a recommendation of the death penalty is made by the same jury during the sentencing phase, which tried the defendant during the guilt phase. Id. at 373.
 {¶ 45} This case is unusual in that those facts occurred here. The original trial jury has already unanimously determined and recommended Hancock's sentence. A new jury does not need to be impaneled for a redetermination. The original trial judge need only follow the procedure delineated in R.C. 2929.03 which calls for its weighing of the aggravating circumstances and mitigating factors after a jury's sentencing recommendation of death. We decline to weigh the aggravating circumstances and mitigating factors as the State suggests, noting that we do not believe that we have that authority and that there is a proper remedy in allowing the trial court to complete its statutorily required procedure.
 {¶ 46} Further, this is not an impermissible resentencing pursuant to R.C. 2953.08(D), but instead an implementation of the proper procedure that R.C. 2929.03 requires for a trial court to utilize when imposing a sentence for a defendant found guilty of aggravated murder. It is axiomatic that a sentence cannot be correct where the trial court does not follow the statutorily required procedure.
 {¶ 47} Finally, double jeopardy concerns do not bar a resentencing in this case. "The touchstone of double-jeopardy protection in capital-sentencing proceedings is whether there has been an `acquittal.'"Sattazahn v. Pennsylvania (2003), ___ U.S. ___, 123 S.Ct. 732, 738. In the case sub judice, there has been no acquittal. The jury found Hancock guilty of aggravated murder and a death specification. The trial court found Hancock guilty of a different death specification. The jury then unanimously recommended the death sentence. However, the trial court did not weigh the aggravating circumstances and mitigating factors, but instead sentenced Hancock to life in prison without parole. As such, there was no acquittal and by sending this case back for resentencing, Hancock is not being placed in double jeopardy.
 {¶ 48} We affirm the State's first assignment of error. We vacate the sentence and reverse and remand this case to the trial court to reimpose sentence pursuant to R.C. 2929.03.
 {¶ 49} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings according to law and consistent with this opinion.
YOUNG and VALEN, JJ., concur.
[1] R.C. 2945.67 states in pertinent part, "[a] prosecuting attorney * * * may appeal as a matter of right any decision of the trial court in a criminal case * * * by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case."
[2] The other items not specifically listed by the trial court included sweat clothes, two transcripts of the audiotape interviews, a letter, and prison records.