JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Thomas Siller appeals his conviction for aggravated murder. We find no merit to the appeal and affirm.
 {¶ 2} On May 15, 2000, Siller and co-defendant Walter Zimmer were indicted for the aggravated murder of Lucy Zolkowski. Siller had been previously convicted of felonious assault, aggravated burglary, aggravated robbery, attempted aggravated murder, and kidnapping regarding his assault and robbery of Lucy Zolkowski, for which he was serving a term of twenty years to life.[1] However, because Zolkowski died from her injuries on April 26, 1999, Siller was indicted for aggravated murder. Siller and Zimmer were tried separately on the aggravated murder charges.
 {¶ 3} The evidence at trial indicated that on June 4, 1997, at approximately 3:49 a.m., the police received an anonymous 911 phone call from a pay phone on Fleet Avenue in Cleveland, reporting that a female had been assaulted at 6211 Hosmer Avenue. Upon arriving at the scene, the police and EMS found Zolkowski, who was 74 years old, severely beaten, gagged, and bound to a chair. Her home had been ransacked, and she never regained consciousness after the assault.
 {¶ 4} Zolkowski's home was dusted for fingerprints, and Jason Smith's fingerprint was lifted from a drawer in the bedroom and Siller's fingerprint was found on an ashtray in the living room. A document was also found indicating Zolkowski kept track of money she loaned to Siller and Zimmer. She had loaned over $12,000 to Siller and over $7,000 to Zimmer.
 {¶ 5} The neighbors told the detectives that Siller and Zimmer had been "hanging around" Zolkowski's home at odd hours of the night. According to the neighbors, Siller had been hired by Zolkowski several months earlier to perform home repairs. Siller had befriended Zolkowski and drove her to the grocery store and bank because she was unable to drive. The neighborhood residents were informed that the police wanted to talk to Zimmer and Siller.
 {¶ 6} On June 6, 1997, Siller told police that he was at a bar on the night in question when his friend, Rose Crowder, paged him. He had borrowed Crowder's car and thought she wanted the car returned. Upon arriving at Crowder's home, he saw Zimmer, who was visibly upset. According to Siller, Zimmer told him he found Zolkowski tied to a chair and beaten. Apparently, Zimmer did not want to call 911 because he had outstanding warrants. Siller also did not want to call 911 because of his own outstanding warrants. After driving Zimmer home, Siller decided to make the anonymous 911 call. The police were suspicious of Siller's statement because he told them he was at Crowder's house sometime after midnight and before 3:00 a.m. The 911 call was not placed until 3:49 a.m. The statement was also suspicious because, although Zimmer gave a similar statement to police, he contended he was with Siller until about midnight. Siller was brought back for further questioning about his inconsistent statements, to which he floundered, attempting to reconcile the inconsistencies.
 {¶ 7} Smith agreed to testify against Siller and Zimmer. Smith testified that he knew Siller and Zimmer from drug transactions in which he supplied them with drugs and they obtained the money from Zolkowski to buy the drugs.
 {¶ 8} According to Smith, on the evening of June 3, 1997, the men had obtained approximately $20 to $30 from Zolkowski. Smith procured a couple of rocks of crack cocaine, and after smoking it, the men desired more so they went back to Zolkowski's home to obtain more money. According to Smith, he observed the men go to the back door, instead of the front door as they usually did. After waiting in the car for about forty minutes, Smith became anxious and went into the house. Upon entering the home, he observed Siller ransacking the drawers in the bedroom. Smith took a stack of blank personal checks from the dresser. He then walked to the front room, where he saw Zimmer standing over Zolkowski, who was tied to a chair. Smith said Zimmer was slapping her and asking her where the money was and Zolkowski was making a gurgling noise. Smith became afraid, so he placed the checks on the dining room table, and left the home.
 {¶ 9} Later that morning at around 6:00 a.m., Smith went to Rose Crowder's home. He said that Siller was there and when Smith asked him what happened, Siller gave him a "look" indicating that Crowder was not aware of what had occurred. Smith admitted that he agreed to testify in exchange for a lesser three-year sentence.
 {¶ 10} Thomas Campbell testified that while he was incarcerated at county jail between July and November 2000, he shared a cell with Siller. According to Campbell, Siller told him that it was Zimmer and Smith who first went into Zolkowski's house and that when Siller came in and saw Zolkowski tied and gagged in a chair, he told her to tell them where the money was or they would kill her. Siller and Zimmer then beat and cut Zolkowski in an effort to get her to tell them where the money was. According to Campbell, Siller told him that at one point, he held Zolkowski's head up while Zimmer beat her. Campbell admitted that in exchange for his testimony, the State agreed to appear on his behalf at his sentencing to inform the court of his cooperation.
 {¶ 11} The coroner indicated that Zolkowski suffered blunt impact injuries to the head, cerebral contusions, and near asphyxiation. The coroner stated that the damage to the brain was caused by the gag in the victim's mouth obstructing her airway, thereby preventing her from breathing properly. She ultimately died of pneumonia, but her death was ruled a homicide.
 {¶ 12} Several inmates testified in Siller's defense and stated that Siller had repeatedly denied having anything to do with the beating and robbing of Zolkowski. Two inmates testified that Smith had boasted that he beat a murder charge by falsely implicating others.
 {¶ 13} Crowder testified that on the night in question, Zimmer came to her house babbling and scared and told her about finding Zolkowski. Crowder claimed she did not want to call 911 because there were drugs in her house. Therefore, she paged Siller. She claimed that about 20 to 25 minutes after Siller and Zimmer left, she heard the police sirens.
 {¶ 14} The jury found Siller guilty of aggravated murder by virtue of the felony murder specification and that he was the principal offender, but found him not guilty of prior calculation and design. The jury chose not to impose the death penalty and Siller was sentenced to thirty years to life.
 Jury Unanimity {¶ 15} In his first assignment of error, Siller argues that because the indictment charged him with aggravated murder with a felony murder specification and because the court simply read the specification to the jury without informing them of the need for a unanimous decision on the underlying crimes, it could not be determined whether the jury came to a unanimous decision regarding his conviction.
 {¶ 16} We first note that defense counsel failed to object to the alleged deficiencies in the indictment and also failed to object to the trial court's charge to the jury. We, therefore, need not consider any error unless it is plain error. Crim.R. 52(B), State v. Coleman (1989),45 Ohio St.3d 298, 301. Plain error means that, but for the existence of the error, the result of the trial would have been otherwise. State v.Wiles (1991), 59 Ohio St.3d 71, 86. We find no plain error.
 {¶ 17} Siller and Zimmer were jointly indicted on one count of aggravated murder. The indictment stated, in relevant part, that Siller and Zimmer:
"purposely caused the death of another, to-wit: Lucy Zolkowski, whilecommitting or attempting to commit, or while fleeing immediately aftercommitting or attempting to commit Kidnapping and/or Aggravated Burglaryand/or Aggravated Robbery."
 {¶ 18} Included was a felony murder specification, which stated:
"The Grand Jurors further find and specify that the offense presentedabove was committed while the offenders were committing or attempting tocommit or fleeing immediately after committing or attempting to commitKidnapping and/or Aggravated Burglary and/or Aggravated Robbery andeither the offenders were the principal offenders in the commission ofthe Aggravated Murder or, if not the principal offenders, committed theAggravated Murder with prior calculation and design."
 {¶ 19} The jury verdict forms indicated that the jury found Siller guilty of aggravated murder by virtue of the felony murder specification and that Siller was the principal offender. The jury found that Siller did not commit the murder with prior calculation and design.
 {¶ 20} Siller relies on Schad v. Arizona (1991), 501 U.S. 624, wherein the U.S. Supreme Court held that it is for the state courts to determine whether statutory alternatives are the means of committing a single offense or constitute independent elements of a crime requiring a separate determination by the jury. In Schad, the defendant challenged the constitutionality of an Arizona state statute which treated premeditation and commission of a felony as simply a means of satisfying a mens rea element of high culpability rather than independent elements of first degree murder. The Court concluded that the defendant's first degree murder conviction was not rendered invalid by the trial court's failure to require the jury to unanimously agree whether the defendant was guilty of premeditated or felony murder. Id. at 632. In the instant case, the jury verdict form clearly delineated that the jury found Siller not guilty of premeditated murder, but guilty of felony murder. Therefore, Schad is not on point with the instant case.
 {¶ 21} The prevailing rule in Ohio is that a general unanimity instruction, such as the one given in this case, will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for liability. State v.Johnson (1989), 46 Ohio St.3d 96, 105. Moreover, it is presumed that "`when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * * the verdict stands if the evidence is sufficient with respect to any one of the acts charged.'" Id., quotingTurner v. United States (1970), 396 U.S. 398, 420, 24 L.Ed.2d 610,90 S.Ct. 642.
 {¶ 22} In the instant case, the evidence presented was sufficient to find Siller guilty of kidnapping, aggravated burglary, and aggravated robbery, and it is inconceivable based on the facts of this case that the jury would find Siller not guilty of at least one of the felonies. We, therefore, find no plain error because the outcome of the trial would not have been different if Siller had been charged and the jury instructed differently.
 {¶ 23} Siller's first assignment of error is overruled.
 Principal Offender Charge {¶ 24} In his second assignment of error, Siller argues that he was incorrectly charged as the principal offender because during the prior trial, his co-defendant Zimmer was portrayed as the principal offender and, thus, the State's inconsistent theories denied him due process.
 {¶ 25} It was irrelevant who the principal offender was in the first trial. The State's theory in the first trial was that both Zimmer and Siller participated in the crimes. There was no need to find one of them to be the principal offender in that case. Therefore, the State's presenting the theory that Siller was the principal offender did not lead to inconsistent results in the second case, because it was not an issue in the first case.
 {¶ 26} Siller's second assignment of error is overruled.
 Co-defendant's Statement {¶ 27} In his third assignment of error, Siller argues that the trial court erred in permitting Zimmer's statement to be read into the record over his objection. According to Zimmer's statement, he found Zolkowski tied to a chair and beaten. Zimmer stated that he asked the victim who beat her and offered her the names of several people, including Siller, but the victim could only grunt.
 {¶ 28} Pursuant to Evid.R. 801(D)(2)(e), statements made in furtherance of a conspiracy do not constitute hearsay. The Ohio Supreme Court in State v. Shelton (1977), 51 Ohio St.2d 68, vacated on other grounds (1978), 438 U.S. 909, held:
"1. Conspiracy to commit a crime does not necessarily end with the commission of the crime.
"2. A declaration of a conspirator, made subsequent to the actual commission of the crime, may be admissible against any co-conspirator if it was made while the conspirators were still concerned with the concealment of their criminal conduct or their identity. * * *"
 {¶ 29} In the instant case, Zimmer's statement was made two days after the crimes were committed. At this point, he and Siller were still obviously concerned with the concealment of their criminal conduct. Therefore, his statement was made in furtherance of the conspiracy in an attempt to conceal the truth.
 {¶ 30} Siller's third assignment of error is overruled.
 Prosecutorial Misconduct {¶ 31} In his fourth assignment of error, Siller argues that he was deprived of a fair trial due to prosecutorial misconduct.
 {¶ 32} A prosecuting attorney's conduct during trial does not constitute grounds for error unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993), 66 Ohio St.3d 402-405; State v.Gest (1995), 108 Ohio App.3d 248, 257. The touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips
(1982), 455 U.S. 209. The effect of the prosecutor's misconduct must be considered in light of the whole trial. State v. Durr (1991),58 Ohio St.3d 86, 94; State v. Maurer (1984), 15 Ohio App.3d 239, 266.
 {¶ 33} First, Siller claims the prosecutor engaged in misconduct by telling prospective jurors during voir dire that they were the spokespersons for their community and that this comment also violated the court's ruling on Siller's motion in limine. Although we agree that it is error for a prosecutor to call upon the jury to send a message to the community, that was not the context in which the prosecutor's statement was made. The prosecutor stated:
"As representatives of the various communities that you come from, you basically are going — if you are selected as a juror in this case, you're going to be their spokesperson. And all we want you to do is just be true to yourselves, be fair and impartial, and decide this case on the facts and the law." (TR. at 1462).
 {¶ 34} The prosecutor was simply explaining to the jurors the role they would assume as jurors.
 {¶ 35} Secondly, Siller argues that the prosecutor engaged in misconduct by not revealing that he had an audiotape of Siller's statement. When a discovery violation occurs, a trial court has discretion in the selection of the appropriate sanction. See Crim.R. 16(E)(3). When deciding whether the trial court abused its discretion, an appellate court should consider whether there was a willful violation of the discovery rules, if foreknowledge would have benefitted the accused in the preparation of his or her defense, and whether the accused was unfairly prejudiced. State v. Parson (1983), 6 Ohio St.3d 442, syllabus.
 {¶ 36} The record indicates that the prosecutor was not aware of the tape because the detective failed to fill out a standard form after taking the statement. In fact, the State did not use the tape in the first trial because the prosecutor was not aware it existed. Furthermore, Siller was not prejudiced by the late disclosure of the tape because the tape, along with its transcription, were made available to Siller's counsel before voir dire and one week prior to the State's request to present it to the jury. The tape also did not contain any information of which Siller and his counsel were unaware. Under these circumstances, the trial court did not err in allowing the tape to be admitted.
 {¶ 37} Thirdly, Siller argues that the prosecutor engaged in misconduct by admonishing Siller to "shut up" when he made a comment during closing argument. Although we agree that the admonishment should have been made by the trial court and not by the prosecutor, we find that this comment did not deprive Siller of a fair trial.
 {¶ 38} Finally, Siller contends that the prosecutor engaged in misconduct by arguing that Siller was the principal offender, when this theory was not advanced during the first trial. As we have already found in the second assignment of error, there was no error in claiming Siller was a principal offender.
 {¶ 39} Siller's fourth assignment of error is overruled.
 Jury Questions and Note Taking {¶ 40} In his fifth assignment of error, Siller argues that the trial court erred in permitting the jury to ask questions of the witnesses and allowing them to take notes.
 {¶ 41} In State v. Smith, 148 Ohio App.3d 665, 2002-Ohio-4091 andState v. Belfoure, Cuyahoga App. No. 80159, 2002-Ohio-2959, this court addressed the issue of jurors' questions. In those cases, as in the instant case, the jurors were permitted to submit written questions to the court reporter, who would give them to the judge. The judge and counsel would then discuss the questions at sidebar to see if they were permissible. If the questions were legally acceptable, the judge would read them to the witness.
 {¶ 42} The rule in this district, unless and until the Supreme Court holds differently,[2] is that "the right of a juror to question a witness during trial is within the sound discretion of the trial court."State v. Smith, supra; State v. Belfoure, supra; State v. Sheppard
(1955), 100 Ohio App. 345. We find no abuse of discretion in the instant case.
 {¶ 43} We also find no error with the trial court's permitting the jurors to take notes. The Ohio Supreme Court concluded in State v.Waddell (1996), 75 Ohio St.3d 163, 168, that advising the jurors that they may take notes is within the sound discretion of the trial court as long as they are also advised that they need not take notes if they do not wish to do so. Id. The trial court in the instant case instructed the jury that they were not required to take notes. We, therefore, find no abuse of discretion.
 {¶ 44} Siller's fifth assignment of error is overruled.
 Motion to Suppress {¶ 45} In his sixth assignment of error, Siller argues that the trial court erred by not suppressing that portion of his June 13 statement to police that followed his assertion of his Fifth Amendment right not to answer the detective's questions.
 {¶ 46} A review of the tape indicates that the detective asked Siller whether he used crack cocaine and Siller replied "gotta plead the Fifth on it." His use of the word "it" clearly indicates he was responding only to the detective's question regarding his cocaine use. Therefore, under these circumstances, the trial court did not err in failing to suppress that portion of Siller's statement that followed this one response.
 {¶ 47} Siller's sixth assignment of error is overruled.
 Cross-Examination Limited {¶ 48} In his seventh assignment of error, Siller argues that the trial court erred by not allowing defense counsel to cross-examine Campbell regarding his desertion from the Marine Corps as a means of attacking his credibility.
 {¶ 49} Evid.R. 608(B) provides, in pertinent part:
"Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, * * * may, * * * in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness * * *."
 {¶ 50} We find that Campbell's alleged desertion from the Marine Corps had no bearing on his truthfulness and further find that the prejudice it would cause outweighed any impeachment value it may have had.
 {¶ 51} Accordingly, the trial court did not abuse its discretion by prohibiting cross-examination on this issue.
 {¶ 52} Siller's seventh assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 53} In his eighth assignment of error, Siller argues that his conviction as a principal offender was against the manifest weight of the evidence because Campbell was not a credible witness.
 {¶ 54} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As this court has stated:
"The weight to be given evidence and the credibility of witnesses are determinations to be made by the triers of fact. State v. Thomas
(1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. If there was sufficient evidence for the triers of fact to find defendant guilty beyond a reasonable doubt this court will not reverse a guilty verdict based on manifest weight of the evidence. State v. Brown (1988),38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus, certiorari denied (1989), 489 U.S. 1040, 109 S.Ct. 1177,103 L.Ed.2d 239."
State v. Rios (1991), 75 Ohio App.3d 288, 291. See, also, Statev. Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 55} As the Ohio Supreme Court held in State v. Keene (1998),81 Ohio St.3d 646, 655:
"We have said that `principal offender' means `the actual killer.'State v. Penix (1987), 32 Ohio St.3d 369, 371, 513 N.E.2d 744, 746. However, we have never held that it means `the sole offender.' There can be more than one actual killer — and thus more than one principal offender — in an aggravated murder. See State v. Joseph (1995),73 Ohio St.3d 450, 469, 653 N.E.2d 285, 300 (Moyer, C.J., dissenting in part and concurring in part)."
 {¶ 56} Campbell testified that Siller told him that initially Smith and Zimmer were sent in to tie up Zolkowski and rob her. Siller went into the house after becoming anxious due to the length of time the men were in the home. When Siller entered the house, he saw Zolkowski bound to the chair but still conscious. Siller warned her that if she did not tell them where the money was, they would kill her. Siller and Zimmer then beat and cut Zolkowski in an attempt to get her to reveal the location of the money. He told Campbell that at one point he held up Zolkowski's head because she could no longer do so, while Zimmer continued to beat her.
 {¶ 57} The jury was well aware that Campbell would benefit from his testimony by having the prosecutor inform the court at his sentencing of his cooperation. They were also aware, by virtue of the witnesses who testified on Siller's behalf, that while in jail, Siller had denied participating in the criminal acts. Therefore, whether Campbell was credible was a question for the jury to determine. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 58} We find that Siller's conviction was not against the manifest weight of the evidence. Accordingly, his eighth assignment of error is overruled.
 Jury Instructions {¶ 59} In his ninth assignment of error, Siller argues that the trial court erroneously instructed the jury.
 {¶ 60} We initially note that no objections were made regarding the jury instructions. "Failure to object to a jury instruction constitutes a waiver and any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Underwood (1983), 3 Ohio St.3d 12, syllabus. InState v. Williford (1990), 49 Ohio St.3d 247, 251, the Supreme Court found that "we have repeatedly held that a failure to object before the jury retires in accordance with the second paragraph of Crim.R. 30(A), absent plain error, constitutes a waiver."
 {¶ 61} We find that Siller has failed to show that the jury instructions constituted plain error.
 {¶ 62} Siller first contends that the trial court erred by reading the erroneous indictment to the jury without instructing them regarding the need for unanimity on the underlying charges. However, as we found regarding the first assignment of error, this did not constitute error.
 {¶ 63} Siller also contends the trial court erred by instructing the jury that Siller was responsible for the natural and foreseeable consequences of his act. In State v. Burchfield (1993), 66 Ohio St.3d 261,262, the Ohio Supreme Court expressed that, when reviewing a causation instruction, the jury instructions must be considered as a whole rather than individually and the court must consider the instructions given before and after the objected-to instruction. In the instant case, as inBurchfield, extensive instructions were given regarding purpose, prior to the causation instruction. Therefore, we find that the trial court's reference to the "natural foreseeable consequences" did not dilute the intent element needed to convict Siller of aggravated murder.
 {¶ 64} Siller also argues that the trial court erred during the penalty phase when it instructed the jury regarding the twenty-five years-to-life option after the thirty years-to-life option. He contends that by doing so, the jury failed to consider the twenty-five years-to-life option in the proper order. We find that this does not constitute reversible error. The jury was properly apprised of the option of imposing twenty-five years-to-life. It obviously chose not to pursue that option.
 {¶ 65} Siller's ninth assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 66} In his tenth assignment of error, Siller argues that his counsel was ineffective for failing to object to the issues he raised in his first, second, fourth, and ninth assignments of error.
 {¶ 67} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley
(1989), 42 Ohio St.3d 13. Pursuant to Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. Bradley, 42 Ohio St.3d 136 at paragraph one of the syllabus. To show such prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie (1998), 81 Ohio St.3d 673, 674.
 {¶ 68} Because we find each of these assignments of error has no merit, we, therefore, conclude that Siller's attorney's performance did not fall below an objective standard of representation.
 {¶ 69} Siller's tenth assignment of error is overruled.
 Cumulative Errors {¶ 70} In his eleventh assignment of error, Siller argues the cumulative effect of the errors in his case merits reversal of his conviction.
 {¶ 71} Because we find no merit to any of Siller's claims, this assignment of error is overruled.
Judgment is affirmed.
KENNETH A. ROCCO, A.J. and ANN DYKE, J. CONCUR.
[1] Siller's convictions were affirmed by this court in State v.Siller (Oct. 28, 1999), Cuyahoga App. No. 75139.
[2] As this court recognized in Smith and Belfoure, a conflict exists among the districts in Ohio and the issue is currently pending before the Ohio Supreme Court in State v. Fisher (2002), 94 Ohio St.3d 1484,763 N.E.2d 1183.