[Cite as *State v. Golsby*, 2020-Ohio-4651.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 18AP-322 |
| | | (C.P.C. No. 17CR-912) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Brian L. Golsby, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 29, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellant. **Argued:** *Ron O'Brien.*

**On brief:** *Yeura Venters,* Public Defender, and *Timothy E. Pierce*, for appellee. **Argued:** *Timothy E. Pierce.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals, pursuant to leave of court granted under R.C. 2945.67, from a judgment entry of the Franklin County Court of Common Pleas finding defendant-appellee, Brian L. Golsby, guilty of aggravated murder, aggravated robbery, kidnapping, rape, tampering with evidence, and having weapons while under disability and sentencing him to 105 years consecutive to life in prison without the possibility of parole. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed March 31, 2017, the state charged Golsby with four counts of aggravated murder, in violation of R.C. 2903.01, all unclassified felonies, and all containing four accompanying capital specifications; three counts of kidnapping in

violation of R.C. 2905.01, first-degree felonies; seven counts of aggravated robbery in violation of R.C. 2911.01, first-degree felonies; one count of rape in violation of R.C. 2907.02, a first-degree felony; two counts of tampering with evidence in violation of R.C. 2921.12, third-degree felonies; and one count of having weapons while under disability in violation of R.C. 2923.13, a third-degree felony. The indictment contained numerous firearm specifications, repeat violent offender ("RVO") specifications, sexually violent predator specifications, and a sexual motivation specification. Of the 18 counts contained in the indictment, ten related to the aggravated murder, kidnapping, aggravated robbery, and rape of Reagan Tokes on February 8 to 9, 2017. The remaining eight charges related to a series of aggravated robberies involving six different victims occurring from January 24 to February 7, 2017. Golsby entered a plea of not guilty.

{¶ 3} The trial court ordered a separate trial for the ten counts related to Tokes. In March 2018, the matter proceeded to a jury trial on all counts except for the having weapons under disability count and several of the accompanying specifications. At the conclusion of the trial, a jury found Golsby guilty on all counts, namely four counts of aggravated murder, one count of kidnapping, one count of aggravated robbery, one count of rape, and two counts of tampering with evidence, along with all capital and firearm specifications submitted to it. The trial court, pursuant to a bench trial, found Golsby guilty of the having weapons under disability count, the sexual motivation specification, the sexually violent predator specifications, and the RVO specifications.

{¶ 4} The case proceeded to the penalty phase on the aggravated murder counts. The trial court merged the escaping detention aggravating circumstance, leaving three remaining aggravating circumstances: that Golsby committed the aggravated murder while he was committing, attempting to commit or fleeing after committing or attempting to commit aggravated robbery, kidnapping, and rape, and either Golsby was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

{¶ 5} Prior to the trial court's final charge to the jury before it deliberated on the possible imposition of the death penalty, the parties discussed the jury instructions with the trial court. The state objected to language in the existing draft of the final instructions stating that the defendant does not have any burden. The state orally requested an

instruction that the defense bears the burden of persuasion by a preponderance of the evidence to establish the existence of mitigating factors. After hearing the state's argument, the trial court refused the state's request for an additional instruction related to defendant's burden, noting, among other reasons, that the state's requested preponderance instruction was not included in the Ohio Jury Instructions ("OJI") and that giving the preponderance instruction could be "confusing" to the jury. (Tr. Vol. VII at 1494-95.)

{¶ 6} In its final instructions to the jury, consistent with the written instructions previously submitted, the trial court instructed the jury as follows:

> In order for you to decide that the sentence of death shall be imposed upon Brian Lee Golsby, the State of Ohio must prove beyond a reasonable doubt that the aggravating circumstances of which you found the defendant guilty are sufficient to outweigh the factors in mitigation of imposing the death sentence. The defendant has the obligation of going forward with the mitigating factors but no burden of proof.
>
> * * *
>
> * * * The State has the burden of proving the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

(Tr. Vol. VII at 1773-74.)

{¶ 7} Further, the trial court instructed the jury that if it could not unanimously agree on the imposition of the death penalty, it must then consider the life sentence alternatives. Specifically, the trial court stated:

> You are not required to unanimously find that the State failed to prove that the aggravating circumstances outweigh the mitigating factors before considering one of the life alternative - - one of the life sentence alternatives. You should proceed to consider and choose one of the life sentence alternatives if any one or more of you conclude that the State has failed to prove beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.
>
> One juror may prevent a death penalty determination if the juror concludes that the State has failed to prove that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. However, you must be unanimous on one of the life sentence alternatives before you can render

> that verdict to the Court.  If you cannot unanimously agree on
> a specific life sentence, you'll then inform the Court by written
> note that you're unable to render a sentencing verdict.

(Tr. Vol. VII at 1781.)  Additionally, in explaining the verdict forms, the trial court instructed the jury that it was being given a specific form to return in the event that one or more jurors disagree and the jury is deadlocked on whether the aggravating circumstances outweigh the mitigating factors, instructing them that in that situation the jury must go on to consider one of the life sentence alternatives.

{¶ 8}    During its deliberations, the jury became deadlocked and was unable to agree on whether the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt.  As a result, the jury unanimously recommended a sentence of life imprisonment without parole.

{¶ 9}    Subsequently, on April 3, 2018, Golsby entered guilty pleas to six counts of aggravated robbery without specification, relating to the untried counts from the indictment.  Ultimately, the trial court sentenced Golsby to life without parole on Count 1, aggravated murder, merging the remaining counts of aggravated murder. After imposing sentences on the remaining counts and specifications, including two sentences of life without the possibility of parole for the kidnapping and rape convictions, the trial court imposed an aggregate sentence of life without parole plus 105 years.  The trial court journalized Golsby's convictions and sentence in an April 6, 2018 judgment entry. Subsequently, the trial court issued an amended judgment entry on April 20, 2018.

{¶ 10}  Golsby initially filed a timely appeal. The state then filed a notice of cross-appeal, seeking leave of court to appeal the trial court's ruling on the jury instructions during the penalty phase.  Golsby then moved to voluntarily dismiss his appeal, and this court granted his motion to dismiss in a June 4, 2018 journal entry.  In an April 30, 2019 decision, this court granted the state's motion for leave to cross-appeal pursuant to App.R. 5(C) and R.C. 2945.67(A) on the grounds that the issue presented is capable of repetition yet evading review. *State v. Golsby*, 10th Dist. No. 18AP-322, 2019-Ohio-1618.

## II. Assignment of Error

{¶ 11} The state assigns the following error for our review:

> The trial court erred and abused its discretion in the penalty phase when it refused to instruct the jury on defendant's preponderance burden and instead instructed the jury that defendant bore no burden of proof.

## III. Analysis

{¶ 12}   In its sole assignment of error, the state argues the trial court erred when it instructed the jury on the burden of proof during the penalty phase.  More specifically, the state asserts the trial court erred in stating the defendant has "no burden of proof" and in declining to instruct the jury that the defendant bore the burden of proving the existence of mitigating factors by a preponderance of the evidence.

### A.  Potential Resentencing Implications

{¶ 13}  At the outset, we note that Golsby argues that any decision we may render in this case would be an advisory opinion due to the limitations of either the Double Jeopardy Clause or the statutory scheme governing resentencing in capital cases.  Golsby argues that even if we were to determine the jury instruction here was erroneous and warranted reversal, the state would not be able to seek imposition of the death penalty on resentencing and would instead be limited to one of the life sentence options.  In support, Golsby asserts that jeopardy attached to his sentence and that, even if it did not, both R.C. 2929.06(B) and 2929.03(C)(2)(b) would operate to preclude the imposition of the death sentence upon resentencing.  Specifically, Golsby relies on the Supreme Court of Ohio's decision in *State v. Penix*, 32 Ohio St.3d 369 (1987), which held:

> Since there is no statutory authority allowing the imposition of the death penalty upon resentencing, we may not create such a procedure out of whole cloth.  Therefore, we hold that when an accused is tried by jury, and convicted of aggravated murder with death specification, a death sentence may be imposed by the trial judge only upon recommendation of the same jury that tried the guilt phase of the proceedings, pursuant to the criteria set forth in R.C. 2929.03.

*Penix* at 373.  *See also State v. Calwise*, 7th Dist. No. 00 CA 77, 2003-Ohio-3463, ¶ 52-54 (finding that even if the appellate court were to conclude the trial court erred during the

sentencing phase, "reversing and remanding for a new sentencing hearing will not allow the state to impose the death penalty" because "[i]n Ohio, the jury which finds a capital defendant guilty of aggravated murder and the specification must be the same jury that determines the penalty"), citing *State v. Carter*, 72 Ohio St.3d 545, 559 (1995). The implication of Golsby's argument is that we need not determine whether the instruction was erroneous.

{¶ 14} "Ordinarily when there is no case in controversy or any ruling by an appellate court that would result in an advisory opinion, there will be no appellate review unless the underlying legal question is capable of repetition yet evading review." *State v. Bistricky*, 51 Ohio St.3d 157, 158 (1990) (noting a court of appeals retains discretion to accept or decline review of matters of substantive law the state seeks to appeal in a criminal proceeding). In granting the state's motion for leave to appeal, this court relied on *Bistricky* and decided to exercise its discretion to review the substantive law ruling of the trial court. *Golsby* at ¶ 3. We noted, in deciding to exercise our discretion to hear the state's appeal, that "even in cases where 'principles of double jeopardy bar re-trial, an appellate court's disposition of such appeals does not result in an advisory opinion where the underlying question is capable of repetition yet evading review.' " *Id.* at ¶ 4, quoting *State v. Ingram*, 12th Dist. No. CA2006-01-012, 2006-Ohio-4559, ¶ 7, citing *Bistricky* at 158-59. Thus, even assuming, without deciding, that Golsby is correct that a trial court could not impose the death penalty during any potential resentencing in this case, we nonetheless must, pursuant to our previous decision granting the state leave to appeal, determine the question presented by the state related to the jury instructions in the penalty phase. *Golsby* at ¶ 4.

**B. Jury Instructions During Penalty Phase**

{¶ 15} Ordinarily, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Kimkhe*, 10th Dist. No. 11AP-433, 2012-Ohio-1964, ¶ 12; *State v. Smith*, 10th Dist. No. 01AP-848, 2002 Ohio App. LEXIS 1507 (Apr. 2, 2002), citing *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). However, when a jury instruction contains an incorrect statement of the law, a reviewing court applies a mixed de novo and abuse of discretion standard of review. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 21, citing *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93 (1995). Thus, "[i]n examining errors

in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.' " *Kokitka* at 93, quoting *Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208 (1990).

{¶ 16} The state argues the trial court committed reversible error when it instructed the jury during the penalty phase that Golsby bore no burden of proof. The state argues that instruction contains an inaccurate statement of applicable law.

{¶ 17} Pursuant to R.C. 2929.03(D)(1), in the penalty phase of a death penalty case, "[t]he defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death." The parties do not dispute that the defense bears the burden of production of evidence of any mitigating factors, but they dispute whether the defense bears any burden of proof. Golsby contends the instruction the trial court provided appropriately tracks the statutory language, but the state responds that an analysis of the greater statutory scheme suggests a defendant does bear some burden of persuasion in proving mitigating factors.

{¶ 18} In *State v. Jenkins*, 15 Ohio St.3d 164 (1984), the Supreme Court considered an argument that Ohio's statutory scheme failed to explicitly identify whether a defendant bears the burden of proving mitigating factors in the penalty phase. In construing R.C. 2929.03 in the context of the greater statutory scheme, the Supreme Court stated:

> Although the standard is not readily apparent from a reading of R.C. 2929.03 or 2929.04, the Committee Comment to the former R.C. 2929.03 resolves any uncertainty. Therein, it is stated that "* * * [m]itigation must be established by a preponderance of the evidence and the rules of evidence also apply in this phase of the trial [except that] (the requirement for a pre-sentence investigation and report, the requirement for a psychiatric examination and report, and the provision for an unsworn statement by the defendant, represent partial exceptions to the rules of evidence)."
>
> In the present case, the trial court placed the burden of proving mitigating factors by a preponderance of the evidence upon

appellant. Thereafter, the state carried the burden of proving by proof beyond a reasonable doubt that the aggravating circumstances appellant was found guilty of committing outweighed the mitigating factors. Since the trial court correctly interpreted the standards governing the burden of proving mitigating factors and by what degree, we are unable to find merit in this assignment of error.

*Jenkins* at 171-72. Thus, based on *Jenkins*, the state argues it was error for the trial court to instruct the jury that Golsby bore no burden of proof when it should have instructed the jury Golsby needed to prove mitigating factors by a preponderance of the evidence.

{¶ 19} Subsequent to *Jenkins*, however, the Supreme Court of Ohio decided *State v. Lawrence*, 44 Ohio St.3d 24 (1989). In *Lawrence*, the Supreme Court held that the aggravating circumstances of that case did not outweigh the mitigating factors beyond a reasonable doubt, rendering moot the appellant's argument that he was denied due process of law when the trial court instructed the jury that the appellant had the burden to prove the existence of mitigating factors by a preponderance of the evidence before the jury could weigh them against the aggravating circumstances. *Lawrence* at 27. Even though the Supreme Court determined the argument regarding the jury instruction was moot, the Supreme Court nonetheless stated:

> [W]e do believe that a jury instruction that closely tracks R.C. 2929.03(D)(1) and which does not place the burden of proving the existence of a mitigating factor by a preponderance of the evidence on the defendant would adequately guide a jury in its deliberations during the penalty phase of a capital trial. Further, such an instruction would ensure that Ohio jurors clearly understand that they are to consider all mitigating evidence in reaching their sentencing recommendation.

> Thus, we believe that it would be the better practice for Ohio trial judges to follow the precise language of R.C. 2929.03(D)(1) for their penalty-phase jury instructions on this subject.

*Lawrence* at 27. Golsby asserts the Supreme Court has never overruled this language in *Lawrence*, and thus argues the trial court appropriately instructed the jury that Golsby bore no burden of proof.

{¶ 20} Though the state acknowledges this language from *Lawrence*, it notes that *Lawrence* did not operate to overrule *Jenkins* and that the Supreme Court has returned to the holding in *Jenkins* several times post-*Lawrence*. *See, e.g.*, *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 210-12 (noting *Jenkins* establishes the defendant has the burden of establishing mitigating factors by a preponderance of the evidence, but finding no plain error in the trial court instructing the jury that the defendant "does not have any burden of proof" because that instruction is a more favorable instruction for a defendant than *Jenkins* requires and thus no plain error); *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 168 (citing *Jenkins* for the proposition that "[i]n the penalty phase, the defendant has the burden of proving, by a preponderance of the evidence, the existence of mitigating factors"). It is worth noting, however, that *Jenkins* specifically relies on the Committee Comment to the *former* version of R.C. 2929.03, the version of the statute with an effective date of January 1, 1974. That former version of R.C. 2929.03 contained language in the statute indicating the defendant had to prove mitigating factors by a preponderance of the evidence. However, in 1981, prior to the Supreme Court of Ohio's decision in *Jenkins*, the General Assembly removed the preponderance of the evidence language from R.C. 2929.03 and has not acted to reinsert that language. (1981 Session Laws – Full Text; Former R.C. 2929.03 effective Oct. 19, 1981.) This significant change to the text of the statute renders *Jenkins'* reliance on the former Committee Comment questionable.

{¶ 21} Having reviewed the relevant case law, we agree with the state that *Lawrence* did not operate to overrule *Jenkins*, and the two cases co-exist. In *Jenkins*, there was an affirmative instruction that the defendant bore the burden of proving mitigating factors by a preponderance of the evidence, which the Supreme Court concluded was an accurate statement of the law. *Lawrence* suggests an instruction that is silent on the defendant's burden is the best practice. Here, unlike either *Jenkins* or *Lawrence*, the trial court affirmatively instructed the jury that the defendant bore no burden of proof.

{¶ 22} Beyond *Jenkins* and *Lawrence*, looking to the Supreme Court of Ohio for guidance serves to highlight the discretion given to trial courts to instruct the jury. *See Kimkhe* at ¶ 12. A review of the case law indicates the Supreme Court has alternately found a trial court did not err in denying a defendant's motion for a jury instruction that he bore no burden at the mitigation phase *and* that a trial court providing the "no burden"

instruction at the mitigation phase set forth the correct standard. *See State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, ¶ 87 (noting "the defendant bears the burden to prove the existence of any mitigating factors by a preponderance of the evidence" and "the trial court did not err by denying Belton's motion for a jury instruction that he bore *no* burden at the mitigation phase"), and *State v. Hill*, 73 Ohio St.3d 433, 438 (1995) ("[t]he trial court clearly and correctly instructed the jury more than four separate times in final penalty instructions that the aggravating circumstances had to outweigh mitigating factors before the jury could recommend the death penalty. The court defined the term 'reasonable doubt,' and specifically told the jury 'the defendant has no burden of proof,' " deeming this instruction to be the "correct standard in the sentence proceedings"). *See also State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 133-36 (finding "the trial court's instructions properly conveyed the state's burden of proof" where the trial court instructed the jury that in order to impose the death penalty, "the State of Ohio must prove beyond a reasonable doubt that the aggravating circumstances of which the defendant was found guilty are sufficient to outweigh the factors in mitigation of imposing the death sentence," and "[t]he defendant does not have any burden of proof"). Additionally, the Supreme Court of Ohio has deemed an instruction that "defendant does not have the burden of proof" in the penalty phase to be "more favorable" to a defendant, yet it has stopped short of finding the instruction erroneous. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 196; *Davis* at ¶ 210-12 (categorizing the instruction that "[d]efendant does not have any burden of proof" as being "more favorable instructions on mitigating evidence than required"). What the Supreme Court of Ohio has not done is declare the "no burden" instruction to be an incorrect statement of the law.

{¶ 23} We previously addressed an argument by the state challenging a similar "no burden" instruction as the one at issue here. In *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, the trial court instructed the jury during the penalty phase as follows:

> In order for you to decide the sentence of death shall be imposed upon Daniel Teitelbaum, the State of Ohio must prove beyond a reasonable doubt that the aggravating circumstances of which the defendant was found guilty is sufficient to outweigh the factors in mitigation of imposing the death sentence.

> The defendant does not have any burden of proof. Reasonable doubt is present when after you have carefully considered and compared all the evidence, you cannot say you are firmly convinced that the aggravating circumstance of which the defendant was found guilty outweighs the mitigating factors.

*Teitelbaum* at ¶ 61. Teitelbaum appealed his underlying conviction, and the state filed a cross-appeal challenging the jury instructions during the penalty phase. In considering the state's assignment of error, we similarly examined the competing lines of cases from the Supreme Court before reasoning:

> We note the jury instruction the trial court provided emanated from the Ohio Jury Instructions. *See State v. Ellis*, 10th Dist. No. 11AP-939, 2012-Ohio-3586, ¶ 12 (noting that, in determining whether a jury instruction is confusing or misleading, although "the Ohio Jury Instructions are not binding legal authority, it is significant that the trial court's instructions here are also consistent with the language from the Ohio Jury Instructions"). The state asks us to conclude that the trial court's instruction contained a misstatement of the law. However, we need not determine whether the "no burden" instruction was erroneous because, even assuming for purposes of argument that it was, there is no demonstration of the requisite prejudice in order for us to find reversible error.
>
> As we noted above, when a jury instruction contains an error of law, we will not find reversible error unless the complaining party can demonstrate the instruction probably misled the jury in a manner affecting the complaining party's substantial rights. *Kokitka* at 93. The state argues the "no burden" instruction could have led the jury to mistakenly believe that the state bore the burden of disproving Teitelbaum's proposed mitigating factors. *See State v. Seiber*, 56 Ohio St.3d 4, 16 (1990) ("[t]he state need not prove the absence of mitigating factors, but the state is required to prove beyond a reasonable doubt that aggravating circumstances outweigh mitigating factors"), citing *Jenkins* at 172. However, this argument is mere speculation. Moreover, in reviewing the entire charge to the jury during the penalty phase, we conclude the instruction that Teitelbaum bore no burden of proof probably did not mislead the jury. In addition to instructing the jury that the state bore the burden of proving the aggravating circumstances outweighed the mitigating factors beyond a reasonable doubt, the trial court also instructed the jurors that they are "the sole judges of the facts, credibility of the witnesses, and the weight

of the evidence. To weigh the evidence you must consider the credibility of the witnesses including the defendant." (Tr. Vol. XVIII at 3712.) Thus, the trial court appropriately instructed the jury that it still needed to weigh the evidence before it, obviating the state's concern that the jury would assume it needed to blindly accept any proffered mitigation evidence from Teitelbaum in the presence of the "no burden" instruction.

Further, the crux of the trial court's instructions during the penalty phase emphasized that in order to impose the death penalty, it was the state, not the defendant, who must convince the jury beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. Reviewing the jury instructions as a whole, we conclude the instructions adequately conveyed the jury's responsibility in this regard. The "no burden" instruction, when read in context, serves to emphasize that [it is] the state's burden to prove the appropriateness of the imposition of the death penalty. It does not, as the state asserts, probably mislead the jury in a manner affecting the state's substantial rights.

*Teitelbaum* at ¶ 134-36.

{¶ 24} Though it addresses a very similar issue to the present case, we note two important distinctions between this case and *Teitelbaum*. First, we recognize that this court in *Teitelbaum* analyzed the state's assignment of error under the rubric of whether the state could demonstrate prejudice in that particular case. Because our previous decision granting the state's motion for leave to appeal directs that we must answer the substantive legal question even if it will not ultimately apply to Golsby, a demonstration of prejudice is not the appropriate analysis here. *Golsby* at ¶ 4. However, we still find the interpretation of the jury instruction in *Teitelbaum* to be informative. Second, the instruction here, while nearly identical, contains an important addition that was not present in the *Teitelbaum* instruction. In the present case, the trial court instructed the jury "[t]he defendant has the obligation of going forward with the mitigating factors but no burden of proof." (Tr. Vol. VII at 1773.) By contrast, in *Teitelbaum*, the instruction was silent on a defendant's burden of production of mitigating factors but nonetheless included the same instruction that defendant does not have any burden of proof. *Teitelbaum* at ¶ 61.

{¶ 25} The state's insistence that the jury instruction here contained an incorrect statement of law regarding the burden of proof during the penalty phase is contingent upon a very narrow interpretation of the instruction. The state asks us to fixate on the "no burden of proof" language in isolation and declare the instruction erroneous in light of *Jenkins* and its progeny. However, to accept the state's conclusion, we would be forced to ignore the context of the overall instructions to the jury regarding the burden of proof to impose the death penalty and the context of the general charge. Importantly, the Supreme Court of Ohio has held that while " 'it is prejudicial error in a criminal case to refuse to administer a requested charge which is pertinent to the case, states the law correctly, and *is not covered by the general charge*,' " a trial court need not give a requested instruction verbatim " 'but may use its own language to communicate the same legal principles to the jury.' " (Emphasis added.) *Sowell* at ¶ 134, quoting *State v. Scott*, 26 Ohio St.3d 92, 101 (1986), and *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 108. Thus, the overall context of the instruction is vital to discerning whether the instruction is, indeed, erroneous.

{¶ 26} The state asks us to interpret the jury instruction here as indicating the defendant has no burden of persuasion relative to the mitigating factors. Under such an interpretation, the state asserts the instruction contains an incorrect statement of law as *Jenkins* and the cases that follow it indicate that a defendant bears the burden, by a preponderance of the evidence, of proving mitigating factors. However, when read in the context of the overall instruction regarding the state's burden and the general charge to the jury, we do not agree with the state that the instruction is incorrect.

{¶ 27} When read in context, we read the instruction to indicate, correctly, that it is the state who bears the burden of proving, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors in order to impose the death penalty. *Teitelbaum* at ¶ 136 (finding that the "no burden" instruction, "when read in context, serves to emphasize that the state's burden to prove the appropriateness of the imposition of the death penalty"). *See also State v. Hancock*, 12th Dist. No. CA2007-03-042, 2008-Ohio-5419, ¶ 13, 19-23 (while agreeing it is the defendant "who carried the burden to prove the mitigating factors by a preponderance of the evidence," the Eighth District nonetheless concluded that the instruction that defendant "does not have any burden of proof" was a "correct statement of the applicable law" and, when read in context, served to instruct the

jury that the burden was on the state to prove the aggravating circumstances outweighed the mitigating factors). The trial court additionally instructed the jury more generally that it is "the sole judges of the facts, the credibility of the witnesses and the weight of the evidence. To weigh the evidence, you must consider the credibility or believability of the witnesses. * * * It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief." (Tr. Vol. VII at 1783-84.) This more general instruction serves to inform the jury it needed to assign weight to the mitigating factors before considering if the state had met its burden of proof, obviating the state's concern that the "no burden" instruction would mislead the jury into believing it needed to "blindly accept any proffered mitigation evidence." *Teitelbaum* at ¶ 135; *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 250 (stating "[t]he weight, if any, given to a mitigating factor is a matter for the discretion of the individual decisionmaker"). We read the "no burden" instruction here as emphasizing that it is the state's burden, pursuant to R.C. 2929.03, to prove beyond a reasonable doubt that the imposition of the death penalty is warranted. *See Sowell* at ¶ 133-36.

{¶ 28} For these reasons, we do not agree with the state that the jury instructions during the penalty phase contained an incorrect statement of law. Accordingly, we need not address Golsby's arguments related to whether he could face the possible imposition of the death penalty in a resentencing hearing as we find no error sufficient to warrant resentencing here. Thus, we overrule the state's sole assignment of error.

## IV. Disposition

{¶ 29} Based on the foregoing reasons, the trial court did not err in instructing the jury during the penalty phase of Golsby's capital case. Having overruled the state's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., concurs.
NELSON, J., concurs in judgment only.

NELSON, J., concurring in judgment only.

{¶ 30} I write separately not to question any particular aspect of the majority's jury instruction analysis, but to express my view that we should not undertake the analysis at all. The law does not permit Mr. Golsby to be resentenced to death now for his horrific murder of Reagan Tokes, and I do not read the decision of the motions panel that granted the state leave to cross-appeal here as binding us to issue a purely advisory opinion even should we find the case moot (including as not presenting an issue capable of repetition yet evading review).

{¶ 31} The jurors, pursuant to uncontested instruction as to how they were to proceed should they be unable to agree on whether to recommend the death penalty, unanimously recommended an aggravated murder sentence of life in prison without the possibility of parole. The judge imposed that sentence. Ohio statute precludes the state from seeking a different result now from another jury. Any issue of how another jury hypothetically might be instructed or might have been instructed in this case therefore is entirely theoretical. Further, the majority decision demonstrates effectively that questions of burden allocation in the penalty phase have from time to time been presented in circumstances under which they have not evaded review. To my mind, then, our respect for appropriate constraints on our authority counsels that we limit our role here to explaining that Ohio's statutory scheme does not permit a new jury to consider capital punishment when the verdict of the trial jury was for life without parole.

{¶ 32} When granting leave for the state's cross-appeal, our motions panel found "consideration of double jeopardy issues to be premature" in that context. *Golsby*, 2019-Ohio-1618, at ¶ 4. But because Ohio's statutory regime providing for and restricting the imposition of capital punishment reinforces double jeopardy protections, we still need not assess the federal or Ohio constitutional provisions barring double jeopardy in order to determine that the death sentence is not a legal option at this juncture. *Compare* the Fifth Amendment to the United States Constitution and Ohio Constitution, Article I, Section 10 *with* R.C. 2929.03 and 2929.06; *compare also Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, ¶ 6 (suggesting that Supreme Court of Ohio may be open to revisiting whether Ohio's Constitution provides broader double jeopardy protection than does the federal charter).

{¶ 33} R.C. 2929.03 specifies when and how capital punishment can be imposed for aggravated murder. After a trial jury has convicted a defendant of aggravated murder with one or more aggravating circumstances, the trial moves to the penalty phase; "the penalty to be imposed on the offender shall be * * * death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment." R.C. 2929.03(C)(2)(a) and (a)(i). The statute is clear that that determination is to be made "[b]y the trial jury and the trial judge, if the offender was tried by jury." R.C. 2929.03(C)(2)(b)(ii). Copies of relevant reports are to be furnished "to the trial jury," and "the trial jury" is to consider both "any evidence raised at trial that is relevant to the aggravating circumstances * * * or to any factors in mitigation of the imposition of the sentence of death" and other evidence presented on those matters. R.C. 2929.03(D)(1). Then "the trial jury * * * shall determine whether the aggravating circumstances * * * are sufficient to outweigh the mitigating factors * * *. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances * * * outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed * * *. Absent such a finding, the jury shall recommend that the offender be sentenced" to one of the specified life terms. R.C. 2929.03(D)(2). "If the trial jury recommends that the offender be sentenced to life imprisonment without parole, * * * the court shall impose the sentence recommended * * *." R.C. 2929.03(D)(2)(c). If the trial jury has recommended death, the court shall impose that sentence if it finds beyond a reasonable doubt that the aggravating circumstances do outweigh the mitigating factors; otherwise, it shall impose one of the life sentences. R.C. 2929.03(D)(3).

{¶ 34} The assignment of capital punishment recommendations to "the trial jury" in the first instance therefore is unequivocal. In 1987, the Supreme Court of Ohio in *State v. Penix*, 32 Ohio St.3d 369, addressed what happens under this statutory system when a death sentence is imposed on the recommendation of the trial jury but that sentence then is vacated because of penalty phase error. Acknowledging the statutory language, the Supreme Court noted that a "sentence of death may be imposed only if the trial jury finds that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt." *Id.* at 370. With the trial jury gone, the Court found, capital punishment was not

an option.  A death sentence may be imposed only "when it is specifically authorized by a state's death penalty statute * * *."  *Id.* at 372.  Ohio law leaves the death recommendation only to "the *trial* jury," and "[t]here is no statutory provision for a second jury to be impaneled and make a recommendation on the death penalty at resentencing."  *Id.* (emphasis in original*).*   "Thus," the Court continued, "the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial determinations."  *Id.*  at 373.  "Since there is no statutory authority allowing the imposition of the death penalty upon resentencing, we may not create such a procedure out of whole cloth."  *Id.* (remanding to trial court for resentencing from among life imprisonment options).  *See also, e.g., State v. Keenan*, 81 Ohio St.3d 133, 140-41 (1998) (noting that "in *Penix*, we held that 'the trial jury' is 'the same jury that convicted the offender in the guilt phase,' " and explaining [with emphasis in the original] that should an initial finding of guilt be vacated "when the defendant's *conviction* is reversed and the cause is remanded for a *new trial*," there would be a new trial jury).

{¶ 35}  Ohio's legislature later acted (for capital crimes committed after October 16, 1996) to make the death penalty a potentially available option in specific circumstances where a death sentence has been imposed pursuant to the recommendation of the trial jury but then overturned for certain reasons and the case remanded for resentencing. "Whenever any court * * * sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase * * *, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender.  If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing."  R.C. 2929.06(B).  That resentencing phase jury then takes on the same responsibilities as the trial jury for purposes of sentencing.  *Id.*

{¶ 36}  The Supreme Court of Ohio strongly reaffirmed *Penix* in a decision holding that these changes in R.C. 2929.06(B) were not retroactive.  *State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, again presented a case in which a defendant had been sentenced to death pursuant to the recommendation of the trial jury, but where reversible error was found to have intruded at the sentencing phase.  Because R.C. 2929.06(B), addressing that scenario, was not retroactive, the death penalty still was not available on

Mr. Williams's resentencing. *Id.* at ¶ 15. "*Penix* * * * was not improperly decided," the Court said, and "has created no confusion in the courts of Ohio." *Id.* at ¶ 11, 14. Under *Penix* and apart from post-amendment capital crimes for which a trial jury had recommended death, "in a capital case tried by jury, correction of the sentence on remand may not be accomplished by impaneling a new jury with the power to impose a new death sentence because R.C. 2929.03 reserves that power to the trial jury." *Id.* at ¶ 13, citing *Penix*.

{¶ 37} The legislature responded to *Williams* by amending R.C. 2929.06 to make it retroactive to "all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981, or for terrorism that was committed on or after May 15, 2002." R.C. 2929.06(E); *see also State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 8 ("The 125th General Assembly responded to *Williams* by further amending R.C. 2929.06" by adding subsection (E)). *White* described and upheld that change, reconfirming that "where an aggravated-murder conviction with a death specification has been affirmed, but the death sentence has been set aside for legal error, * * * * R.C. 2929.06(B) permits empanelment of a new jury to resentence the offender." *Id.* at ¶ 25.

{¶ 38} Together, these cases and the plain text of R.C. 2929.03 and 2929.06 instruct that a capital sentence may be imposed only if explicitly authorized by statute, and (after a jury trial) only where the trial jury unanimously has recommended death. Should a reviewing court reverse a sentence for sentencing phase error, a capital sentence may be imposed on the recommendation of a new jury only where the original sentence that was set aside was a sentence of death as predicated on jury recommendation. Nothing in Ohio statute authorizes a court to swap out a life sentence as recommended by the trial jury for a death sentence on a second go-round. To reason otherwise would be to manufacture a heightened penalty substitution procedure "out of whole cloth," to use the *Penix* expression. *Compare also, e.g., State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, ¶ 35 (R.C. 2929.03(C)(2)(b) and (D)(2) "specifically entrust the trial jury with making the necessary findings in capital cases" and "until the enactment of R.C. 2929.06(B) [regarding death sentences reversed for penalty phase error], no provision of law authorized any other jury to perform that task").

{¶ 39} So under Ohio law, and even without resort to double jeopardy jurisprudence pursuant to the federal or state Constitutions, the death penalty is not an available

resentencing option at this juncture regarding Mr. Golsby. This is not a case like *White* or like *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, in which the trial juries had recommended death at the sentencing phase. Mr. Golsby's jury, in contrast, did not agree upon death, and instead unanimously recommended the sentence that the trial court imposed of life in prison without the possibility of parole. Were we to remand the case (and we unanimously determine that we should not), the state would be able to obtain no higher sentence than the life without parole sentence already in place.

{¶ 40} It generally is a guiding constraint on judicial authority that "[c]ourts will not decide moot cases." *See, e.g., Dublin v. Friedman*, 10th Dist. No. 16AP-516, 2017-Ohio-9127, ¶ 18. In most cases, " '[a]ctions are moot when they are or have become fictitious, * * * hypothetical, [or] academic * * *. The distinguishing characteristic of such issues is that they involve no actual genuine * * * controversy, the decision of which can definitely affect existing legal relations.' A moot case [includes attempts to obtain judgment] * * * 'upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy.' " *Id.* (citations omitted). In most circumstances, at least, we have observed that when a case becomes moot, "we lack jurisdiction to decide the issues." *See, e.g., James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 793 (10th Dist.1991); *State v. Tackett*, 11th Dist. No. 2015-A-0067, 2016-Ohio-3005, ¶ 9 ("Tackett's sole argument is moot * * * , and as such we lack jurisdiction to grant relief"); *compare State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, ¶ 12 ("we do not decide moot cases").

{¶ 41} Now, controlling precedents establish that "a claim is not moot" under certain "exceptional circumstances" when the challenged action is too short to allow remedy before its expiration and the same complaining party is likely to be subject to the same action again. *See State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, ¶ 10 (explaining the concept of "capable of repetition, yet evading review").

{¶ 42} This category of cases, then, is "narrow." *See, e.g., Huntington Natl. Bank v. CPW Properties*, 7th Dist. No. 17 CA 0917, 2018-Ohio-1219, ¶ 7-8. And the case at hand does not fit, as I believe the majority opinion demonstrates. The burden of proof issue raised by the state has not evaded review; quite the contrary, it has been assessed even by the Supreme Court of Ohio on more than one occasion. *See supra* at ¶ 18-20 (citing four Supreme Court decisions); *id.* at ¶ 22 (citing more). And the cross-appeal mechanism

employed by the state here and in *Teitelbaum* points to one way in which the issue could be joined yet again in the context of an ongoing dispute: where a defendant prevails on appeal from a death sentence and the state has cross-appealed a penalty-phase jury instruction, the appellate court in returning the matter to the trial court for further proceedings would, it seems to me, be fully justified in addressing the instruction parameters. Not so here, where resentencing is off the table. *Compare Huntington Natl. Bank* at ¶ 9 ("We are not convinced by Appellant's argument that the issues in this appeal will evade review when it cites" another recent case in which the matter did not evade review). Here, as we found in *State ex rel. Lancaster School Dist. Support Assn. v. Bd. of Edn.*, 10th Dist. No. 06AP-305, 2006-Ohio-5520, ¶ 15, I "fail to see why [the] dispute * * * will necessarily (or even likely) evade review in the future."

{¶ 43} To any extent that R.C. 2945.67 may provide us with jurisdiction to entertain an advisory opinion in this case, it gives us broad discretion to decline to exercise review of the moot issue. *State v. Bistricky*, 51 Ohio St.3d 157, 160 (1990). And it explicitly does not permit us to reconsider a final verdict in this posture. Informed by all the powerful reasons that underlie our normal reluctance to opine on purely academic questions, and because I discern no overriding reason for us to engage such a question in this context after having found it moot, I would not proceed beyond declaring the case moot.

{¶ 44} With all sincere respect for the majority view, I do not believe that the motions panel in granting the state leave to cross-appeal decreed "that we must answer the substantive legal question even if it will not ultimately apply to Golsby." *Compare supra* at ¶ 24. That panel plainly did not evaluate whether the law would permit imposition of a death sentence now, after the trial jury recommended life without parole, and it went so far as to specify its finding that at the motion stage, "consideration of double jeopardy issues [was] premature." *Golsby* at ¶ 4. Indeed, the majority even now only assumes for purposes of argument but does not decide that "a trial court could not impose the death penalty during any potential resentencing in this case." *Supra* at ¶ 14.

{¶ 45} The motions panel, then, did not evaluate mootness, and did not undertake to analyze whether the jury instruction issue has evaded or will henceforth evade review; it did not, for example, catalogue the Supreme Court jury instruction cases that the majority evaluates here. Instead, the motions panel on this score offered a correct statement of Ohio

law: "Nor, under Ohio law, would the potential bar of double jeopardy preclude this court from exercising its discretionary authority to review a substantive law issue capable of repetition yet evading review." *Id.* As the use of the subjunctive form indicates, that is not an assessment that the motions panel collectively undertook and on which it reached a firm conclusion. *See, e.g., Merriam-Webster.com* ("subjunctive" verb form "represents a denoted act or state not as fact but as contingent or possible"). " '*[W]here* the underlying question is capable of repetition yet evading review' " an advisory opinion may be rendered, *see Golsby* at ¶ 4 (emphasis added), but *whether* that is the circumstance here is not a question that I think the leave to cross-appeal estops us from analyzing. *Compare, e.g., Cincinnati v. Harrison*, 1st Dist. No. C-130195, 2014-Ohio-2844, ¶ 46 (different context; an appellate court "may re-evaluate our jurisdiction to proceed at any time, even on the consideration of a direct appeal").

{¶ 46} Because the trial jury recommended the sentence of life without parole that the trial court then imposed, the state cannot have another jury consider the capital sentence it seeks. Therefore, in this context with the defense having dropped its appeal, I believe that the most appropriate course would be to dismiss the state's cross-appeal now that we have undertaken the full analysis. The majority has concluded that we must address the burden of proof jury instruction question. On that premise, the majority affirms the judgment below, which I also would leave in place. I therefore respectfully concur in the majority's judgment only.

_____